**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Earl M. Hasbrouck, et al., | No. CV-20-08112-PCT-DWL |
| Plaintiffs, | **ORDER** |
| v. | |
| Yavapai County, et al., | |
| Defendant. | |

Plaintiffs Earl and Donna Hasbrouck ("Plaintiffs") are a married couple bringing this action *pro se* against Yavapai County (the "County"), eleven individual Yavapai County officials and employees, and one Arizona state official.[1] Plaintiffs' allegations arise from a series of disputes stretching back to the late 1990s concerning a parcel of real property they own in Yavapai County. In their sprawling and often inscrutable complaint, Plaintiffs assert an array of federal and state claims, including claims premised on violations of the Fourth, Fifth, Eighth, and Fourteenth Amendments and the *Ex Post Facto* and Bill of Attainder clauses of the United States Constitution. (Doc. 1.)

The County and the eleven County employees and officials (collectively, "the County Defendants")[2] now move to dismiss the complaint. (Doc. 16.) Defendant Carlton

---

[1] The complaint also named ten unknown parties who were later dismissed. (Doc. 38.)

[2] The eleven County defendants are: County Supervisors Rowle P. Simmons, Thomas Thurman, Randy Garrison, Craig L. Brown, and Mary Mallory; County Clerk Kim Kapin; County Attorney Sheila Polk; Yavapai County Development Services Director David Williams; Land Use Director Rebecca Borowski; and hearing officers Larry Jacobs and Peter Van Haren. (Doc. 1 ¶¶ 15-22.) All eleven are sued in their official capacities, and

Woodroof, sued in his official capacity as the Director of the Arizona Department of Revenue ("the State Defendant"), also moves to dismiss the complaint. (Doc. 18.) Also pending before the Court are (1) Plaintiffs' motion for clarification and remedial action (Doc. 39); (2) Plaintiffs' motion to dismiss County Supervisor Mary Mallory as a defendant (Doc. 40); and (3) Plaintiffs' motion for judicial notice (Doc. 42). For the following reasons, the Court grants the State Defendant's motion to dismiss, grants in part and denies in part the County Defendants' motion to dismiss, grants Plaintiffs' motion to dismiss Mallory, denies Plaintiffs' motion for clarification and remedial action, and denies Plaintiffs' motion for judicial notice. Based on these actions, the sole remaining claim is Count One, which is asserted solely against the County. Plaintiffs are granted limited leave to amend their complaint, if they wish to attempt to cure some of the deficiencies in this order, and the County is granted leave to seek dismissal of Count One regardless of whether Plaintiffs choose to amend.

## BACKGROUND

### I.    Factual Background

The following facts, which are assumed to be true for purposes of the pending motions, are derived from Plaintiffs' complaint and documents subject to judicial notice.[3]

---

four—Williams, Borowski, Jacobs, and Van Haren—are also sued in their individual capacities. (*Id.*)

[3] Plaintiffs attach ten exhibits to the complaint (Doc. 1-1 at 1-15), which are part of the complaint and may be considered in ruling on a motion to dismiss. *Outdoor Media Grp., Inc. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir. 2007). The County Defendants attach four exhibits to their motion to dismiss: (1) Plaintiffs' notice of claim sent to the County pursuant to A.R.S. § 12-821.01, (2) the County hearing office rules of procedure, (3) official correspondence from the County to Plaintiffs regarding their defective notice of appeal, and (4) the County administrative judgment against Plaintiffs. (Doc. 16, Exs. A-D.) The State Defendant attaches (1) email correspondence between counsel regarding this action and (2) Plaintiffs' notice of claim sent to the State pursuant to A.R.S. § 12-821.01. (Docs. 18-1, 18-2.) Both sets of defendants ask the Court to take judicial notice of these attachments. (Doc. 16 at 3 n.1, 6 n.2, 8 n.3, 9 n.4; Doc. 18 at 2.) Taking judicial notice of the notices of claims sent to both sets of defendants, the official correspondence, the County hearing office rules of procedure, and the administrative judgment is proper. The County rules of procedure and the administrative judgment are matters of public record and can be readily verified from sources that cannot reasonably be questioned. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999-1001 (9th Cir. 2018) ("[C]ourts may take judicial notice of some public records, including the records and reports of administrative bodies.") (citation and internal quotation marks omitted); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court

1  In 1996, Plaintiffs (who are now octogenarians) purchased and moved to a parcel in

2  Ash Fork, Yavapai County, Arizona.  (Doc. 1 ¶¶ 14, 24.)  Following their arrival in Yavapai

3  County, Plaintiffs planned to remodel their home and construct new structures on the parcel

4  in accordance with plans submitted to and orally approved by Yavapai County officials.

5  (*Id.* ¶¶ 14, 26; Doc. 1-1 at 2.)  Shortly after Plaintiffs' purchase, however, a disagreement

6  arose between Plaintiffs and personnel from Yavapai County Development Services

7  ("YCDS") regarding various zoning issues, especially sewage and water issues.  (Doc. 1

8  ¶¶ 26-28.)  Plaintiffs were told they did not need permits to make improvements to the

9  property's sewage disposal system, but Plaintiffs sought and were awarded a permit

10  anyway.  (*Id.*)  Personal circumstances prevented Plaintiffs from commencing their

11  remodeling project in earnest until 2001, and in the meantime they had begun using twenty-

12  foot steel shipping containers for storage on their lot.  (*Id.* ¶¶ 29-32.)

13  In 2001, Plaintiffs got into a disagreement with the Arizona Department of Revenue

14  ("ADOR") about the tax assessment of their property.  (*Id.* ¶ 33.)  ADOR insisted on

15  assessing Plaintiffs' property at $400,000, which was based on the value of the property

16  after Plaintiffs' ongoing construction project was to be completed.  (*Id.*)  This dispute was

17  not resolved until 2007, when Plaintiffs successfully defeated the assessment when they

18  "helped enact Prop. 207."  (*Id.*)

19  In 2006, a diagram was posted on the Yavapai County Assessor's website showing

21  filings and other matters of public record.").  Likewise, the official correspondence
between the Plaintiffs and the Defendants—including Plaintiffs' notices of claim—are
22  matters of public record that can be readily verified and cannot reasonably be questioned.
*Phoenix Newspapers, Inc. v. Ellis*, 159 P.3d 578, 582 (Ariz. Ct. App. 2007) (under Arizona
23  law, a "Notice of Claim is a public record"); *Advert. Display Sys. 1, LLC v. City & County
of San Francisco*, 2006 WL 1646138, *1 n.1 (N.D. Cal. 2006).  Plaintiffs do not object to
24  the taking of judicial notice and do not contest the documents' authenticity.  The Court
does not notice of matters that are under dispute, such as the Defendants' motivations or
25  intent in their interactions with Plaintiffs, or whether Plaintiffs in fact violated County land
use ordinances.  *Cf. Khoja*, 899 F.3d at 999 ("[A] court cannot take judicial notice of
26  disputed facts contained in such public records.").  As for the State Defendant's counsel's
email correspondence with Plaintiffs (Doc. 18-1), the Court does not take judicial notice
27  because even though Plaintiffs do not dispute this document, it is unclear that an email
exchange between counsel and Plaintiffs is a matter of public record.  In any event, the
28  Court does not rely on it in this ruling.  *Khoja*, 899 F.2d at 1000 n.5 ("An irrelevant fact
could hardly be an 'adjudicative fact' . . . .") (alteration in original) (citation omitted).

1    that Plaintiffs' property was out of zoning compliance and that certain portions of the

2    structure on the property were not being calculated for tax purposes.  (Doc. 1-1 at 4.)

3    Plaintiffs did not discover this diagram until 2018.  (*Id.*)  Plaintiffs' allegations about their

4    disputes with ADOR from 2001 to 2007, and the diagram posted in 2006 and discovered

5    in 2018, constitute the totality of their factual allegations regarding the State Defendant.

6    (Doc. 1 ¶ 33; Doc. 1-1 at 4.)

7          From roughly 2001 to 2007, Plaintiffs had other conflicts with neighbors and

8    County officials regarding the storage of items on Plaintiffs' property and the use of water

9    resources.  (*Id.* ¶ 34.)  Specifically, Plaintiffs complained to YCDS about misconduct

10   occurring at a neighboring property, which led to demolition occurring on that property at

11   County expense; joined "other dissenting community members" in protesting a newly

12   drilled noncompliant well; and were subject to the County's "anonymous complaint

13   strategy" regarding "debris" stored on their property.  (*Id.*)  Plaintiffs contend these spats

14   partly led to their subsequent mistreatment, by "trigger[ing] additional bureaucratic

15   revenge."  (*Id.*)

16         In 2010, a YCDS official (who died in 2012 and is not a party here) asked Plaintiffs

17   to rearrange the steel storage containers on their lot.  (*Id.* ¶ 35.)  Plaintiffs complied without

18   understanding what, if any, basis YCDS had for making such a request.  (*Id.*)

19         In 2012, Plaintiffs' building permits were "cancelled" without their knowledge.  (*Id.*

20   ¶ 36.)  Plaintiffs continued to remodel their property, and only in July 2018 did they

21   become aware of the cancellation or any other regulatory barriers to their remodeling

22   project.  (*Id.* ¶¶ 36-37.)

23         On December 1, 2017, the County Board of Supervisors passed a zoning ordinance

24   limiting the number of storage sheds that can be located on a property.  (*Id.* ¶ 56; Doc. 1-1

25   at 15.)

26         On July 17, 2018, Plaintiffs returned home to discover that a "Notice of Violation"

27   placard had been placed on their property.  (Doc. 1 ¶ 38.)  Neighbors reported seeing YCDS

28   personnel "conducting a warrantless search" of the premises and taking photographs.  (*Id.*)

Neighbors said there were three individuals, two of whom were YCDS staff and one of whom was "a law enforcement presence." (*Id.*)  This led Plaintiffs to cease their construction projects. (*Id.*) Plaintiffs later received a follow-up letter from YCDS detailing alleged zoning infractions, including improperly storing vehicles and construction materials on the property. (*Id.* ¶ 39; Doc. 1-1 at 5-6.)  Plaintiffs subsequently demanded an administrative hearing to resolve the alleged infractions. (Doc. 1 ¶ 40.)

On August 24, 2018, YCDS Land Use Director Rebecca Borowski ("Borowski") filed a notice of violation against Plaintiffs, which had the effect of commencing administrative proceedings. (*Id.* ¶ 41; Doc. 1-1 at 7.)  On September 14, 2018, Plaintiffs filed an answer and counterclaim, including a separate notice to Arizona state officials regarding their "constitutional challenge." (Doc. 1 ¶ 42.)  The parties then participated in a "trial" or preliminary hearing on October 9, 2018, during which Plaintiffs "objected to but complied faithfully with the biased Hearing Office Rules of Discovery clearly intended to provide prosecutorial advantage, YCDS refusing to participate." (*Id.* ¶ 43.)

From there, Plaintiffs engaged in settlement talks with Borowski and YCDS Department Head David Williams ("Williams"), who were "acting in their official capacity as joint prosecutors on behalf of Yavapai County" in the administrative action. (*Id.* ¶ 44.) Borowski and Williams "admitted their procedural error in bringing the action in the fraudulent manner done and agreed to extend [Plaintiffs'] original building permits for two years . . . ." (*Id.*)  Hearing officer Larry C. Jacobs ("Jacobs") then officially opened proceedings for the record, "made the [C]ounty's settlement offer a matter of record," and acknowledged receipt of Plaintiffs' plan for the administrative hearing. (*Id.*)  "Plaintiffs were subsequently fined $100 . . . ." (*Id.*)

Settlement talks started to break down when the County Defendants learned about Plaintiffs' plan to identify at trial "the government entities responsible for instigating and maliciously pursuing the clearly fraudulent charges." (*Id.* ¶ 45.)  According to Plaintiffs, "an immediate coverup commenced." (*Id.*)  The County ultimately sent Plaintiffs an acknowledgement of violation that Plaintiffs refused to sign because they considered it a

"contrivance clearly intended to impute guilt." (*Id.*; Doc. 1-1 at 8-9.)  At this point efforts to settle the case effectively failed.  Plaintiffs then filed an application and motion for default, papers that "remain blatantly ignored yet today." (Doc. 1 ¶ 46.)  The original November 6, 2018 trial date "was vacated at Yavapai County['s] whim." (*Id.* ¶ 47.) Plaintiffs did not have an opportunity to object. (*Id.*)

On December 11, 2018, an administrative hearing took place. (*Id.* ¶ 48.)  Plaintiffs allege they were treated unjustly by the presiding hearing officer, Peter Van Haren ("Van Haren"), in "what was clearly a setup." (*Id.*)  Van Haren ordered Plaintiffs to sit quietly during the hearing, not allowing them to object verbally, and two sheriff's deputies sat behind Plaintiffs during the first half of the proceedings. (*Id.*)  According to Plaintiffs, the evidence used during the hearing was "surprise hearsay." (*Id.*)  After the hearing concluded, Van Haren fined Plaintiffs $100 and ordered them to (1) remove all disallowed storage items, construction material, commercial vehicles, and "general debris" from the property, or screen those "items from view with an approved permitted screening method"; (2) "obtain an issued permit to remove or retain all unpermitted construction"; and (3) "contact the land use specialist for an on-site compliance inspection" by January 20, 2019. (Doc. 16 at 37-38.)  If the inspection found that the conditions of compliance were not met, a civil penalty of $7,500 would be imposed. (*Id.*)

Plaintiffs attempted to comply with Van Haren's order by selling off the equipment that was stored on their property, resulting in a "severe" financial loss. (Doc. 1 ¶¶ 49-50.) Plaintiffs also attempted to appeal the order, but their appeal was denied when they failed to remit the required $440 fee. (*Id.* ¶¶ 48-50; Doc. 16 at 35.)

On April 4, 2019, Borowski sent Plaintiffs a notice of non-compliance based on a purported March 1, 2019 property inspection. (Doc. 1 ¶ 51; Doc. 1-1 at 10-11.)  On April 26, 2019, Plaintiffs complained about the notice of noncompliance to the County hearing office, the County Clerk, and the Arizona Commission on Judicial Conduct. (Doc. 1 ¶ 52; Doc. 1-1 at 12-14.)[4]  During this time, Plaintiffs' computer hard drive was "remotely wiped

---

[4]     The Arizona Commission on Judicial Conduct replied that it "does not have jurisdiction over hearing officers with the Yavapai County Board of Supervisors and/or the

1   with no way to prove complicity but the timing speaks for itself."  (Doc. 1 ¶ 52.)

2       On May 14, 2019, "final judgment was rendered" in the County hearing, with Jacobs

3   upholding Van Haren's determination, "as specifically ordered by" Williams.  (*Id.* ¶ 54.)

4   II.   Procedural Background

5       On August 9, 2019, Plaintiffs mailed notices of claims to the State and County

6   Defendants.  (Doc. 16 at 16-27; Doc. 18-2.)

7       On May 14, 2020, Plaintiffs filed the complaint.  (Doc. 1.)

8       On August 13, 2020, Plaintiffs sought leave to amend the complaint.  (Docs. 12,

9   13.)

10      On August 17, 2020 the Court ordered Plaintiffs to file their proposed amended

11  complaint in accordance with LRCiv 15.1.  (Doc. 15.)  Plaintiffs subsequently attempted

12  to amend or supplement the complaint on several occasions but each attempt failed to

13  comply with the local rules and/or the Court's orders.  (Docs. 17, 22-23, 28, 31-32.)

14  Eventually, the Court ordered that no amended complaint be filed before the Court's

15  resolution of the pending motions to dismiss.  (Doc. 33.)

16      On August 18, 2020, the County Defendants filed a motion to dismiss.  (Doc. 16.)

17  The motion thereafter became fully briefed.  (Docs. 20, 21.)

18      On August 24, 2020, the State Defendant filed a motion to dismiss.  (Doc. 18.)  The

19  motion thereafter became fully briefed.  (Docs. 24, 25.)

20      On December 2, 2020, the Court terminated the unknown defendants due to

21  Plaintiffs' failure to serve them within the time prescribed by Rule 4(m).  (Doc. 38.)

22      On December 14, 2020, Plaintiffs filed a motion for clarification and remedial

23  action with respect to this termination.  (Doc. 39.)

24      On January 4, 2021, Plaintiffs filed a motion to dismiss Mallory as a defendant.

25  (Docs. 40, 41.)

26      On January 8, 2021, Plaintiffs filed a motion for judicial notice regarding "alleged

27  fraud on the court" and their intent to name additional parties as defendants.  (Doc. 42.)

28  _____

Yavapai County Development Services Department."  (Doc. 1-1 at 14; Doc. 1 ¶ 53.)

**LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party."  *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144-45 (9th Cir. 2013).

Legal conclusions couched as factual allegations are not entitled to the presumption of truth.  *Iqbal*, 556 U.S. at 678-79 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*  Taking as true all of the well-pleaded factual allegations, there must be "more than a sheer possibility" that a defendant is liable for the claim to be "plausible." *Id.* at 678.  The court also may dismiss due to "a lack of a cognizable legal theory." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015).

The *Iqbal* pleading standard applies to *pro se* complaints, but they "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Although entitled to "great leeway," a *pro se* litigant's pleadings "nonetheless must meet some minimum threshold in providing a defendant with notice of what it is that it allegedly did wrong." *Brazil v. U.S. Dep't of Navy*, 66 F.3d 193, 199 (9th Cir. 1995).

…

…

**DISCUSSION**

Count One of the complaint is a claim under 42 U.S.C. § 1983 asserted against a single defendant, the County, while the remaining counts, construed liberally, assert a mix of state and federal claims against all of the County and State Defendants.  Plaintiffs' theory of the case thus appears to be that, aside from the passage of the zoning ordinance discussed in Count One, all the defendants' remaining conduct constituted an unlawful conspiracy against them in violation of their rights under the U.S. Constitution, the Arizona Constitution, and Arizona statute.

The complaint is not a model of precision regarding which causes of action underlie which claims against which defendants.  The Court construes the complaint "liberally" and "afford[s] [Plaintiffs] the benefit of any doubt" at the motion to dismiss stage, *Hebbe*, 627 F.3d at 342, and sets out the counts below for the sake of clarity.

Count One is brought under § 1983 against the County.  It alleges that the County's passage of a zoning ordinance limiting the number of storage sheds that can be located on a property constitutes a bill of attainder and *ex post facto* law in violation of U.S. Constitution Article I, §§ 9-10, the Fourth, Eighth, and Fourteenth Amendments to the U.S. Constitution, and the Arizona Constitution, Article II § 25.  (Doc. 1 ¶ 56.)

Count Two is brought pursuant to 42 U.S.C. §§ 1981, 1983, 1985, and 1986 against all defendants and alleges that all were involved in a "racketeering Enterprise engaged in, but not limited to, [a] Fourth, Fifth, Eighth and Fourteenth Amendment violation scheme and artifice intended to materially defraud Plaintiffs and others of tangible and intangible property rights, forcibly enter upon Plaintiffs' Ash Fork, Arizona real property in the manner of trespass under color of authority . . . without warrant, warning or probable cause . . . ."  (*Id.* ¶¶ 57-58.)  In other words, Plaintiffs assert that the State and County Defendants conspired to deprive them of constitutional rights through the zoning action and in particular through trespass on their property when unspecified individuals conducted an inspection and placed a placard informing Plaintiffs of their land use violations.

Count Three asserts claims under §§ 1981, 1983, 1985, and 1986, as well as A.R.S.

§ 13-1804 (criminalizing theft by extortion), against all defendants for their conduct after the notice of violation was placed on Plaintiffs' property. (*Id.* ¶¶ 59-60.) Specifically, Plaintiffs allege that the defendants' behavior in resolving the alleged land use violations constituted "capricious patterns and practices of racketeering retribution, blackmail, threat & theft by extortion." (*Id.* ¶ 60.)

Count Four asserts violations of §§ 1981, 1983, 1985, and 1986 against all defendants for Fifth and Fourteenth Amendment violations of due process in the conduct of the administrative hearing resulting in "asset forfeiture, unjust enrichment, excessive fines, and unjust punishment . . . ." (*Id.* ¶¶ 61-62.)

Count Five asserts §§ 1983, 1985(3), and 1986 violations against all defendants for their conduct in "unlawfully taking or otherwise dispossessing Plaintiffs of personal property . . . without just compensation by declaring said personal property . . . 'debris' knowing said declaration was false . . . ." (*Id.* ¶¶ 63-64.)

Count Six alleges that the County Hearing Office staff and other "Enterprise participants" violated Arizona's organized crime, fraud, and terrorism statutes (A.R.S. § 13-2301 *et seq.*) in their prosecution of the administrative hearing, which Plaintiffs allege amounted to "a policing for-profit theft-by-extortion Enterprise . . . [and] a revenue producing scam." (Doc. 1 ¶¶ 65-66.) This claim is brought under A.R.S. § 13-2314.04(A), which establishes a cause of action for civil remedies including treble damages to a "person who sustains reasonably foreseeable injury to his person, business or property by a pattern of racketeering activity, or by a violation of section 13-2312 involving a pattern of racketeering activity."

Count Seven alleges that all defendants engaged in "bad faith" and "malicious prosecution" during the conduct of the administrative hearing, in violation of §§ 1983, 1985, and 1986. (Doc. 1 ¶¶ 67-68.)

Count Eight alleges that all defendants' conduct in prosecuting the administrative hearing constituted violations of §§ 1981, 1983, 1985, and 1986 by "soliciting and facilitating defamatory or otherwise slanderous anonymous complaints of imaginarily

assumed wrongdoing" regarding Plaintiffs' use of their property.  (*Id.* ¶¶ 69-70.)

I.    State Defendant's Motion To Dismiss

The State Defendant argues he must be dismissed from this action because (1) the claims against him are barred by sovereign immunity, (2) the claims against him are barred by the relevant statutes of limitations, (3) Plaintiffs failed to comply with Arizona's notice of claims statute, and (4) the claims against him fail to state a claim on which relief may be granted.  (Doc. 18.)

As discussed below, the Court agrees that Plaintiffs' claims against the State Defendant must be dismissed because they are barred by sovereign immunity.  The dismissal is without leave to amend because any amendment would be futile.

A.    **Sovereign Immunity**

"The Eleventh Amendment bars suits against the State or its agencies for all types of relief, absent unequivocal consent by the state."  *Krainski v. Nevada ex rel. Bd. of Regents of Nev. Sys. of Higher Educ.*, 616 F.3d 963, 967 (9th Cir. 2010) (internal quotation marks omitted).  "The Eleventh Amendment jurisdictional bar applies regardless of the nature of relief sought and extends to state instrumentalities and agencies."  *Id.* (citing *Papsan v. Allain*, 478 U.S. 265, 276 (1986)).  "Eleventh Amendment immunity also shields state officials from official capacity suits."  *Id.*  This is so because, under the Eleventh Amendment, "a suit against a state official in his or her official capacity . . . . is no different from a suit against the State itself."  *Flint v. Dennison*, 488 F.3d 816, 824-25 (9th Cir. 2007) (alteration in original) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)).  "Therefore, state officials sued in their official capacities . . . are not 'persons' within the meaning of § 1983 and are therefore generally entitled to Eleventh Amendment immunity."  *Id.*[5]  State officials are also immune from state-law claims that are brought in

---

[5]    The same rules apply to claims under §§ 1981, 1985, and 1986.  *Cerrato v. S.F. Cmty. Coll. Dist.*, 26 F.3d 968, 972 (9th Cir. 1994) ("Because [§ 1983] provides an exclusive remedy for violation by state governmental units of the rights guaranteed in section 1981, our conclusion as to Cerrato's section 1983 claims constitutes an adjudication of his section 1981 claims. . . .  We agree with the defendants that the Eleventh Amendment bars us from hearing Cerrato's claims against the SFCC district."); *id.* at 975 ("[T]he Eleventh Amendment bars Cerrato's [§§ 1985 and 1986] claims.").

federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106, 121 (1984) ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law.").

There is, however, a narrow exception: a plaintiff may "maintain a federal action to compel a state official's prospective compliance with the plaintiff's federal rights." *Krainski*, 616 F.3d at 967 (internal quotation marks omitted). Thus, "[w]hen sued for prospective injunctive relief, a state official in his official capacity *is* considered a 'person' for § 1983 purposes" under the doctrine of *Ex parte Young*, 209 U.S. 123 (1908). *Flint*, 488 F.3d at 825.

These principles compel the conclusion that Plaintiffs' claims against the State Defendant must be dismissed. The complaint names the State Defendant in his official capacity only, as Director of ADOR. (Doc. 1 ¶ 22.) ADOR is a state agency that is protected by the Eleventh Amendment. *Hyun v. Rossotti*, 49 F. Supp. 2d 1162, 1164 (D. Ariz. 1999) ("Regardless of what kind of relief Plaintiff seeks, his suit against [ADOR] is barred by the Eleventh Amendment to the United States Constitution. . . .  [A]s a state agency, [ADOR] cannot be sued in federal court and Hyun's claims against [ADOR] must be dismissed."). As a state official sued in his official capacity, the State Defendant is thereby shielded from this official capacity suit. *Krainski*, 616 F.3d at 967. Finally, Plaintiffs do not seek any form of prospective injunctive relief against the State Defendant (or any of the other defendants). (Doc. 1 at 29-31.)

"Dismissal of a *pro se* complaint without leave to amend is proper only if it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Schucker v. Rockwood*, 846 F.2d 1202, 1203-04 (9th Cir. 1988) (internal quotation marks omitted). Here, the complaint's deficiencies respecting the State Defendant cannot be cured by amendment. As explained below, this is because many of the claims involving the State Defendant are time-barred and the complaint fails to make any plausible claims connecting the timely allegations against the State Defendant to any of the facts underlying this action. Leave to amend would therefore be futile.

1

### B.      State Statute Of Limitations

"Dismissal on statute of limitations grounds can be granted pursuant to Fed. R. Civ. P. 12(b)(6) only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999) (internal quotation marks omitted).  Because Woodruff is a public employee, any state claims against him must "be brought within one year after the cause of action accrues and not afterward." A.R.S. § 12-821.  Arizona recognizes the discovery rule, which holds that "a cause of action does not accrue until the plaintiff knows or with reasonable diligence should know the facts underlying the cause." *Doe v. Roe*, 955 P.2d 951, 960 (Ariz. 1998). *See also* A.R.S. § 12-821.01(B) ("For purposes of this section a cause of action accrues when the damaged party realizes he or she has been damaged and knows or reasonably should know the cause, source, act, event, instrumentality or condition that caused or contributed to the damage.").

As discussed further in Section I.D *infra*, none of Plaintiffs' allegations state any connection between the State Defendant (or the ADOR) and the zoning dispute between Plaintiffs and Yavapai County, other than conclusory assertions such as that the "Defendants" (presumably including the State Defendant) were "willing participating members of a government enabled racketeering or otherwise unlawful Enterprise." (Doc. 1 ¶ 64.)  The only allegations regarding the State Defendant relate to a tax assessment dispute that ended in 2007 and the posting of a drawing in 2006 (which Plaintiffs did not discover until 2018). (*Id.* ¶ 33; Doc. 1-1 at 4.)  Thus, even resolving all doubts in Plaintiffs' favor, the allegations in the complaint cannot be read as asserting that Plaintiffs brought their state law claims against the State Defendant within one year of accrual—the relevant date of discovery is 2007 (or 2018 at the latest) yet the complaint was not filed until May 2020.[6]

…

---

[6]      Because the Court determines that the statute of limitations bars Plaintiffs' state-law claims, the Court need not address the State Defendant's arguments regarding Arizona's notice of claims statute.

1

C.    **Federal Statute Of Limitations**

2

The statute of limitations for Plaintiffs' federal claims under 42 U.S.C. §§ 1981,

3

1983, and 1985 is two years.  *TwoRivers*, 174 F.3d at 991 ("Without a federal limitations

4

period, the federal courts borrow the statute of limitations for § 1983 claims applicable to

5

personal injury claims in the forum state.  In Arizona, the courts apply a two-year statute

6

of limitations to § 1983 claims.") (citations omitted); *Cholla Ready Mix, Inc. v. Civish*, 382

7

F.3d 969, 974 (9th Cir. 2004) (same for § 1981); *McDougal v. County of Imperial*, 942

8

F.2d 668, 673-74 (9th Cir. 1991) (same for § 1985).

9

Plaintiffs allege they discovered the drawing sometime in 2018 and the complaint

10

was filed in May 2020.  (Doc. 1-1 at 4).  When borrowing a state's statute of limitations

11

for a federal cause of action, courts "borrow no more than necessary.  Consistent with this

12

maxim, federal, not state, law determines when a civil rights claim accrues.  Under federal

13

law, a claim accrues when the plaintiff knows or has reason to know of the injury which is

14

the basis of the action." *TwoRivers*, 174 F.3d at 991 (citations and internal quotation marks

15

omitted).  Although Plaintiffs do not allege when in 2018 they discovered the drawing, and

16

such discovery must have taken place on or after May 14, 2018 for the allegation to be

17

timely, the Court reads the complaint liberally and resolves the factual ambiguity of the

18

exact date of discovery in Plaintiffs' favor.  The Court also does not resolve whether,

19

notwithstanding their 2018 discovery of the drawing, Plaintiffs had reason to know of the

20

2006 drawing at an earlier date.  *United States ex rel. Air Control Techs., Inc. v. Pre Con*

21

*Indus., Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013) ("[A] complaint cannot be dismissed

22

unless it appears beyond doubt that the plaintiff can prove no set of facts that would

23

establish the timeliness of the claim.") (internal quotation marks omitted).  Thus, reading

24

the complaint liberally and resolving all factual disputes in Plaintiffs' favor, the Court

25

concludes that this allegation is not barred on federal statute of limitation grounds at this

26

stage.  Nonetheless, to the extent Plaintiffs seek damages for the tax assessment dispute

27

that began in 2001 and ended in 2007 (Doc. 1 at 30-31), this relief is clearly barred by the

28

two-year statute of limitations.  *Civish*, 382 F.3d at 974 ("Discrete acts are not actionable

1    if time barred, even if related to acts alleged in timely filed charges.").

2         Further, all § 1986 claims must be brought "within one year after the cause of action

3    has accrued." 42 U.S.C. § 1986. *See also Bledsoe v. City of Stockton Police Dep't*, 2020

4    WL 5203438, *3 (E.D. Cal. 2020) ("Unlike 42 U.S.C. Sections 1983 and 1985, the statute

5    of limitations for claims predicated on 42 U.S.C. Section 1986 originates within the statute

6    itself. Actions under this statute must be commenced within one year after the cause of

7    action has accrued.") (internal quotation marks omitted). Thus, like the state-law claims,

8    all § 1986 claims against the State Defendant are barred by the statute of limitations.

9         D.    **Failure To State A Claim On Which Relief May Be Granted**

10        Leaving aside Eleventh Amendment sovereign immunity, the only allegation

11   involving the State Defendant that is not time-barred on the face of the complaint relates

12   to the drawing posted on the Yavapai County Assessor's website. The Court concludes

13   that this allegation, standing alone, fails to state a claim on which relief may be granted.

14        The two paragraphs of the complaint addressing ADOR's conduct do not articulate

15   any basis for finding that ADOR had any interest in (let alone any involvement in) the land

16   use disputes between Plaintiffs and the County Defendants. Nothing in the complaint

17   suggests any connection between the 2006 drawing and Plaintiffs' claims—the Plaintiffs

18   themselves describe the drawing as "yet to be understood." (Doc. 1 ¶¶ 22, 33.) Plaintiffs

19   assert seven of eight counts against the "defendants"—a term that presumably includes the

20   State Defendant, despite the dearth of factual allegations against him—but the complaint

21   is devoid of any non-conclusory allegation linking the 2006 drawing to the purported

22   scheme to violate Plaintiffs' rights. None of Plaintiffs' counts mention the drawing or

23   allege any connection between the drawing and the other conduct giving rise to this action.

24   (*Id.* ¶¶ 56-70.) Plaintiffs do not seek any relief for this drawing or claim any injury suffered

25   because of it. (*Id.* at 29-31; Doc. 1-1 at 4.)

26        Thus, Plaintiffs' conclusory assertion that the "defendants" were seeking revenge

27   for their disagreements with Plaintiffs—and thus entered into a conspiracy to deprive

28   Plaintiffs of their rights—fails to cross the line from "sheer possibility" to "plausible," at

least with respect to the State Defendant and the 2006 drawing.  *Iqbal*, 556 U.S. at 678.  *See also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007) ("[A] conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality. . . .  [W]ithout some further factual enhancement it stops short of the line between possibility and plausibility of entitle[ment] to relief.") (internal quotation marks omitted) (fourth alteration in original); *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047-48 (9th Cir. 2008) ("A bare allegation of a conspiracy is almost impossible to defend against, particularly where the defendants are large institutions . . . .  Here, [plaintiffs] pleaded only ultimate facts, such as conspiracy, and legal conclusions.  They failed to plead the necessary evidentiary facts to support those conclusions.").

Because Plaintiffs' sole timely allegation against the State Defendant fails to state a claim on which relief may be granted, and because all claims against the State Defendant in his official capacity are barred by the Eleventh Amendment, the Court concludes the State Defendant should be dismissed from this action without leave to amend.  Although leave to amend is granted liberally, particularly when it comes to *pro se* litigants, the Court is satisfied that amendment in this instance would be futile.  Even if the complaint could be amended to sue the State Defendant in his individual rather than official capacity and seek prospective injunctive relief rather than damages, it would still be largely untimely and would not articulate any plausible basis for relief.

II.    County Defendants' Motion To Dismiss

The County Defendants move to dismiss the complaint on grounds similar to the State Defendant.  They argue that Plaintiffs' state-law claims are barred by the statute of limitations and Plaintiffs' failure to comply with Arizona's notice of claims statute and that some of Plaintiffs' federal claims are also time-barred.  (Doc. 16 at 2-4.)  They argue the remaining claims against the four County Defendants named in their individual capacities—Williams, Borowski, Van Haren, and Jacobs—are barred by absolute and qualified immunity.  (*Id.* at 5-9.)  Finally, they argue the complaint should be dismissed for failure to state a claim.  (*Id.* at 9-11.)

- 16 -

## A.     State Statute Of Limitations

As stated above, "[d]ismissal on statute of limitations grounds can be granted pursuant to Fed. R. Civ. P. 12(b)(6) only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *TwoRivers*, 174 F.3d at 991.  The County Defendants are public employees and a public entity, so any state-law claims against them must "be brought within one year after the cause of action accrues and not afterward."  A.R.S. § 12-821.  Arizona recognizes the discovery rule, which holds that "a cause of action does not accrue until the plaintiff knows or with reasonable diligence should know the facts underlying the cause." *Doe v. Roe*, 955 P.2d 951, 960 (Ariz. 1998).  *See also* A.R.S. § 12-821.01(B).

Under the discovery rule, the "plaintiff need not know *all* the facts underlying a cause of action to trigger accrual.  But the plaintiff must at least possess a minimum requisite of knowledge sufficient to identify that a wrong occurred and caused injury." *Watkins v. Arpaio*, 367 P.3d 72, 76 (Ariz. Ct. App. 2016) (internal quotation marks omitted).  The "'core question' of when a claim accrued is not when the plaintiff was conclusively aware she had a cause of action against a particular party, but instead when 'a reasonable person would have been on notice to investigate.'" *Cruz v. City of Tucson*, 401 P.3d 1018, 1021 (Ariz. Ct. App. 2017) (quoting *Walk v. Ring*, 44 P.3d 990, 996 (Ariz. 2002)).

The complaint demonstrates that Plaintiffs were on notice to investigate the alleged injuries before May 14, 2019.  The conduct giving rise to this action began on July 17, 2018, when YCDS personnel inspected Plaintiffs' property and left a notice of violation. (Doc. 1 ¶¶ 36-38.)  Plaintiffs also complain about the 2018 enforcement of an ordinance passed in 2017 and the commencement and prosecution of a land use hearing that terminated on December 11, 2018.  (*Id.* ¶¶ 56-70.)  Potentially relevant events subsequent to the December 11, 2018 hearing, including the denial of the appeal[7] and Plaintiffs' receipt

---

[7]     As noted, the official correspondence from the County notifying Plaintiffs of their deficient appeal is subject to judicial notice.  The County informed Plaintiffs on January 2, 2019 that their timely notice of appeal was ineffective until Plaintiffs paid a $440 filing fee.  (Doc. 16, Ex. C.)  The County told Plaintiffs that if "the fee has not been received by

of the notice of noncompliance with the judgment, occurred before May 14, 2019.  (*Id.* ¶ 51.)  The only potentially relevant event that occurred within the one-year state statute of limitations was hearing officer Jacobs's May 14, 2019 "upholding [of] Van Haren's determination," which rendered "final judgment" in the administrative proceeding.  (*Id.* ¶ 54.)

The Court is not persuaded that the May 14, 2019 judgment "set[s] the accrual date for this action," as Plaintiffs contend.  *Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").  Rather, under Arizona law, Plaintiffs' state-law claims against the County Defendants accrued some time between July 17, 2018 (when YCDS posted the notice of violation) and, at the very latest, April 16, 2019 (when Plaintiffs received the notice of noncompliance with the December 11, 2018 judgment).  (Doc. 1 ¶¶ 38, 51.)  There is simply "no doubt" that Plaintiffs were aware "of the facts at the heart of [their] claim[s]" before May 14, 2019.  *Watkins*, 367 P.3d at 76.  The alleged Fourth Amendment violation happened on July 17, 2018; the alleged due process and related violations happened before or during the hearing on December 11, 2018; and even the subsequent denial of appeal and notice of noncompliance took place more than one year before Plaintiffs initiated this action.  Indeed, Plaintiffs complained of their treatment to the County and to the Arizona Commission on Judicial Conduct on or around April 26, 2019.  (Doc. 1 ¶ 52; Doc. 1-1 at 12-14.)[8]  Thus, it is clear that Plaintiffs were not only sufficiently aware of the facts underlying their claims, they in fact had already sought to remedy and complained of them before May 14, 2019.  *Cf. Cruz*, 401 P.3d at 1021 ("Cruz was not merely on notice to investigate, she in fact did so.")

Plaintiffs argue that the continuing tort doctrine applies, such that the statute of

---

January 15, 2019, the appeal will be rejected and returned to you."  (*Id.*)  In their response to the County Defendants' motion to dismiss, Plaintiffs acknowledge their refusal to "fork over $440.00 to a group of legislators unconstitutionally usurping the power of the judiciary . . . ."  (Doc. 21 at 3 ¶ 3.)

[8]      The complaint does not specify the precise date Plaintiffs submitted their complaint to the Commission on Judicial Conduct, but it must have occurred on or before May 6, 2019, when the Commission sent its response.  (Doc. 1-1 at 14.)

limitations accrued on May 14, 2019.  (Doc. 21 at 6-7.)  Under the continuing tort doctrine, "a tort claim based on a series of related wrongful acts is considered continuous, and accrual begins at the termination of the wrongdoing, rather than at the beginning." *Cruz*, 401 P.3d at 1023.  But Arizona law does not support the proposition that the continuing tort doctrine delays accrual of Plaintiffs' claims in this case.  First, Plaintiffs cite no legal authority—and the Court is aware of none—establishing that the continuing tort doctrine applies to the specific state-law claims asserted by Plaintiffs.  *Cf. Watkins*, 367 P.3d at 77 ("We are unaware of any authority compelling the conclusion that a false-light claim is subject to the 'continuing wrong' doctrine, and we decline Watkins' request to apply it here.").

Second, the Court doubts that applying the continuing tort doctrine would be appropriate in this instance, because the events giving rise to liability were sufficient on their own to put Plaintiffs on notice of their claims, without any need for aggregation.  *Id.* at 76 ("Watkins's intentional-infliction claim is unlike those in the cases he cites; in those cases, liability arose from a long series of cumulative acts, any one of which likely was insufficient by itself to support the claim.  Here, we do not have a situation in which the initial acts in a series of alleged wrongdoing are not sufficient by themselves to support a claim."); *Floyd v. Donahue*, 923 P.2d 875, 879 (Ariz. Ct. App. 1996) ("We agree that under certain conditions a tort is continuous, and in such cases the limitations period does not commence until the date of the last tortious act.  However, the continuing tort rule does not apply here because each claimed act is a separate assault causing separate as well as cumulative injury.") (citations omitted).[9]  Here, each of the County Defendants' complained-of actions is separately cognizable and it is clear from Plaintiffs' own course of conduct that they were aware of the underlying actions giving rise to their claim before the limitations period began.  Thus, all of Plaintiffs' state-law claims against the County

---

[9]     In describing the events giving rise to Plaintiffs' state-law claims as sufficient on their own for statute of limitations purposes, the Court does not mean to imply that Plaintiffs' claims are sufficient for other purposes, such as to state a claim on which relief may be granted.

1    Defendants are time-barred.[10]

2        B.    **Federal Statute of Limitations**

3            As stated above with respect to the State Defendant, Plaintiffs' federal claims

4    against the County Defendants (except for any § 1986 claims) are governed by a two-year

5    statute of limitations.  Because the challenged inspection of Plaintiffs' property was on July

6    17, 2018 and the other conduct giving rise to this action occurred after that date, Plaintiffs'

7    federal claims accrued within the two-year limitation period (which commenced on May

8    15, 2018, two years before Plaintiffs filed suit).

9            This includes Count One, Plaintiffs' *ex post facto* and bill of attainder claim against

10   the County, even though the challenged ordinance was passed in 2017.  The County

11   Defendants argue, without citing any legal authority, that the date of accrual is the date of

12   the ordinance's passage.  (Doc. 16 at 4.)  The Court concludes that, at least on this record

13   for motion-to-dismiss purposes, the limitation period began when the challenged ordinance

14   was enforced—and therefore when Plaintiffs became aware of it—rather than when it was

15   passed.  *Cf. Bird v. Dep't of Hum. Servs.*, 935 F.3d 738, 745 (9th Cir. 2019) ("[A] facial

16   challenge to a statute generally accrues when the statute is enforced—in other words,

17   [when] it is applied.") (second alteration in original) (citation and internal quotation marks

18   omitted); *Sopher v. Washington*, 2008 WL 4793173, *7 (D. Or. 2008) ("Sopher's ex post

19   facto and equal protection claims accrued in 1999, when Sopher received the Board Review

20   Packet notifying him of the application of the JAM rules to his case.").  Here, the

21   enforcement of the challenged ordinance began in July 2018.  Because the County

22   Defendants do not seek dismissal of Count One on any other basis, dismissal of this count

23   is not warranted at this time.[11]

---

24   [10]    Because the Court determines that the statute of limitations bars Plaintiffs' state-law
25   claims, the Court need not address the County Defendants' arguments regarding Arizona's
     notice of claims statute.

26   [11]    The Court acknowledges some uncertainty in the legal landscape regarding the
27   accrual of a claim challenging a statute's constitutionality.  On the one hand, the Ninth
     Circuit has opined that "our own view [is] that a facial challenge to a statute generally
     accrues when 'the statute is enforced—in other words, [when] it is applied.'"  *Bird*, 935
28   F.3d at 745 (second alteration in original).  On the other hand, the Ninth Circuit has carved
     out exceptions to this general proposition in the cases of facial takings claims and facial

1

2

3

4

5

6

7

8

9

10

11

12

      The parties should not, to be clear, interpret this outcome as a determination that Count One has merit.  Plaintiffs do not attempt to explain, in their moving papers, how a county may be held liable for money damages under § 1983 under a bill-of-attainder theory where the challenged county ordinance does not single them out by name—and indeed is also alleged to affect "landowners similarly situated"—or purport to exact punishment. (Doc. 1 ¶ 56.)  Nor do Plaintiffs attempt to explain how a § 1983 claim could be a vehicle for asserting alleged violations of the Arizona state constitution.  (*Id.* ["Defendant Yavapai County did in violation of . . . 42 U.S.C. § 1983 . . . violat[e] . . . the Arizona Constitution, Article II, Section 25."].)[12]  Additionally, the County's supposed motive for enacting the challenged ordinance is supported by only vague, conclusory allegations.  (*Id.* [alleging the ordinance was enacted "in response to a request by [YCDS] . . . in retaliation for losing a lawsuit brought 14 years earlier"].)

13

14

15

16

17

18

19

      For these reasons, even though a party is ordinarily barred by Rule 12(g)(2) from filing a successive motion to dismiss on grounds that could have been raised in an earlier dismissal motion, the Court will permit the County to file another dismissal motion that addresses Count One.  This outcome is necessitated, in part, by the prolixity of Plaintiffs' complaint, which made it difficult for the County to raise all potential dismissal arguments in the initial motion it filed jointly with the other County Defendants.  *See generally In re*

20

21

22

23

24

25

26

substantive due process claims.  *Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 688 (9th Cir. 1993) ("[I]n cases in which it would be futile to seek compensation in state court, a facial challenge to a statute as a taking without just compensation under section 1983 accrues upon the passage of the ordinance."); *Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1027 (9th Cir. 2007) ("In the context of a facial challenge under the Takings Clause, we have held that the cause of action accrues on the date that the challenged statute or ordinance went into effect. . . .  Although we have not yet held that these accrual rules apply to facial substantive due process claims, we see no reason to distinguish between facial takings claims and facial substantive due process claims. . . .  [I]t stands to reason that any facial injury to any right should be apparent upon passage and enactment of a statute.").  The parties do not cite any authority establishing when an *ex post facto* or bill of attainder claim accrues.  Also, the County Defendants have not asserted that Plaintiffs' challenge is facial rather than as-applied.

27

28

[12]  *See, e.g., Sweaney v. Ada County, Idaho*, 119 F.3d 1385, 1391 (9th Cir. 1997) ("Section 1983 . . . only creates a cause of action for violations of the federal Constitution and laws.  To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress.") (citation and internal quotation marks omitted).

*Apple iPhone Antitrust Litig.*, 846 F.3d 313, 318 (9th Cir. 2017) ("We read Rule 12(g)(2) in light of the general policy of the Federal Rules of Civil Procedure, expressed in Rule 1. That rule directs that the Federal Rules 'be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.'   Denying late-filed Rule 12(b)(6) motions and relegating defendants to the three procedural avenues specified in Rule 12(h)(2) can produce unnecessary and costly delays, contrary to the direction of Rule 1.") (citation omitted).

Some of Plaintiffs' counts assert claims under § 1986.  But as noted, all § 1986 claims must be brought within one year after the cause of action has accrued.  Thus, like the state-law claims, all § 1986 claims against the County Defendants are barred by the statute of limitations.

As for fact allegations from before the limitation period, they cannot establish the basis for the claim but may be considered as background.  *Civish*, 382 F.3d at 975 ("[A]cts occurring more than two years before Cholla filed suit may be relevant background material in support of its timely claim.").

C.     **Failure To State A Claim**

With the dismissal of the State Defendant from this lawsuit, and of the state-law and § 1986 claims barred by the statute of limitations, Plaintiffs' remaining claims are as follows.  Count One is Plaintiffs' *ex post facto* and bill of attainder claim brought against the County under § 1983.  (Doc. 1 ¶ 56.)  As noted above, this count is the only one not premised on conspiracy liability and the County does not identify any basis for dismissal other than timeliness.  Count One therefore survives the motion to dismiss, without prejudice to the County's ability to file a successive motion to dismiss.

Count Two is Plaintiffs' Fourth Amendment claim for the County Defendants' alleged warrantless search of Plaintiffs' premises, brought under §§ 1981, 1983, and 1985. (*Id.* ¶¶ 57-58.)  Count Three is a claim of "Racketeering Conspiracy" against the County Defendants to deprive Plaintiffs of their constitutional rights.  (*Id.* ¶¶ 59-60.)  Count Four is a claim, essentially, of a due process violation, brought under §§ 1981, 1983, and 1985.

(*Id.* ¶¶ 61-62.)  Count Five is a constitutional takings and equal protection claim brought under §§ 1983 and 1985.  (*Id.* ¶¶ 63-64.)   Counts Seven and Eight allege malicious prosecution and prosecutorial misconduct under §§ 1981, 1983, and 1985.  (*Id.* ¶¶ 67-70.)  The County Defendants argue that all of these claims fail to state a claim.  (Doc. 16 at 9.)

### 1.   *Section 1981 Claims*

To state a claim under § 1981, "plaintiffs must show intentional discrimination on account of race."  *Evans v. McKay*, 869 F.2d 1341, 1344 (9th Cir. 1989).  *See also Lowe v. City of Monrovia*, 775 F.2d 998, 1010 (9th Cir. 1985) ("[S]ection 1981 redresses only discrimination based on race."), *as amended*, 784 F.2d 1407 (9th Cir. 1986).  The complaint is devoid of any allegation that any of the defendants intentionally discriminated against Plaintiffs on the basis of Plaintiffs' race.  Therefore, Plaintiffs' § 1981 claims must be dismissed.  *See, e.g.*, *Longariello v. Gompers Rehab. Ctr.*, 2010 WL 94113, *3 (D. Ariz. 2010) ("Because Plaintiff has not alleged racial discrimination, the Court dismisses the Section 1981 claim.").

This dismissal is without leave to amend.  Plaintiffs' complaint makes clear that the mistreatment to which they were allegedly subjected had nothing to do with their race—instead, Plaintiffs allege that the County Defendants' motive was to exact "retaliation for losing a lawsuit brought 14 years earlier" (Doc. 1 ¶ 56), to "resurrect allegations of Plaintiff wrongdoing [that] Yavapai County Development Services failed to prove earlier in 2006" (*id.* ¶ 58), and/or to pursue a "retributive response to Plaintiffs' Memo of Understanding regarding Plaintiffs' presumed active status of building permits" (*id.* ¶ 60).  Although leave to amend should be freely granted when justice requires, particularly in cases involving *pro se* litigants, Plaintiffs have made clear that this isn't a race-related case.

### 2.   *Allegations Of Conspiracy*

In the complaint, Plaintiffs explain that "the gravamen for [this] action arises as a consequence of Defendant Enterprise['s] ultra vires connivance and fraud."  (Doc. 1 ¶ 7.)  In other words, Plaintiffs substantially rely on the theory that the County Defendants formed an unlawful conspiracy "Enterprise" to deprive them of their civil rights.  All of

1    the remaining counts are premised, one way or another, on this theory.  (Doc. 1 ¶¶ 58, 60,

2    62, 64, 68, 70.)  The County Defendants argue that Plaintiffs' conspiracy claims must be

3    dismissed for their factual inadequacy and because "[a] government entity cannot conspire

4    with itself."  (Doc. 16 at 10-11.)  As explained below, the Court agrees.

### a.    Section 1985

6        A properly pleaded § 1985 claim "must include an allegation of racial or class-based

7    animus." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).[13]  "'[A] plaintiff

8    must show, *inter alia*, (1) that some racial, or perhaps otherwise class-based, invidiously

9    discriminatory animus lay behind the conspirators' action, and (2) that the conspiracy

10   aimed at interfering with rights that are protected against private, as well as official,

11   encroachment.'" *Butler v. Elle*, 281 F.3d 1014, 1028 (9th Cir. 2002) (cleaned up) (quoting

12   *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267-68 (1993)).  "The Supreme

13   Court has not defined the parameters of a class beyond race, but the term unquestionably

14   connotes something more than a group of individuals who share a desire to engage in

15   conduct that the § 1985(3) disfavors." *Id.* (internal quotation marks omitted).  Courts must

16   "exercise restraint in extending § 1985(3) beyond racial prejudice." *Id.*

17       Plaintiffs do not allege any racial or class-based animus behind the County

18   Defendants' conduct.  Plaintiffs' § 1985 claims must therefore be dismissed. *See, e.g.*,

19   *Fallay v. City & Cnty. of San Francisco*, 604 F. App'x 539, 542 (9th Cir. 2015) ("We

20

---

21   [13]    Section 1985 has three subsections.  Section 1985(1) provides a cause of action for
conspiracy "to prevent, by force, intimidation, or threat, any person from accepting or
22   holding any office, trust, or place of confidence under the United States, or from
discharging any duties thereof . . . ."  Section 1985(2) provides a cause of action for
23   conspiracy "to deter, by force, intimidation, or threat, any party or witness in any court of
the United States from attending such court, or from testifying to any matter pending
24   therein, . . . or to injure such party or witness in his person or property on account of his
having so attended or testified, . . . . or for the purpose of impeding, hindering,
25   obstructing, or defeating, in any manner, the due course of justice in any State or Territory,
with intent to deny any citizen the equal protection of the laws, or to injure him or his
26   property for lawfully enforcing, or attempting to enforce, the right of any person, or class
of persons, to the equal protection of the laws[.]"  Section 1985(3) provides a cause of
27   action against persons who "conspire or go in disguise on the highway or on the premises
of another, for the purpose of depriving, either directly or indirectly, any person or class of
28   persons of the equal protection of the laws, or of equal privileges and immunities under the
laws . . . ."

affirm the district court's dismissal of Fallay's § 1985 claims against the FASIC Defendants because Fallay failed to allege that their actions were motivated by discriminatory animus."); *Trerice v. Pedersen*, 769 F.2d 1398, 1402 (9th Cir. 1985) ("[W]e have found a failure to state a claim upon which relief can be granted where there has been an insufficient allegation of the requisite animus.").  This dismissal is without leave to amend, for the same reason as Plaintiffs' § 1981 claims.

### b.    Section 1983

"To state a claim for a conspiracy to violate one's constitutional rights under section 1983, the plaintiff must state specific facts to support the existence of the claimed conspiracy." *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989).  A plaintiff must allege "(1) the existence of an express or implied agreement among the defendant officers to deprive him of his constitutional rights, and (2) an actual deprivation of those rights resulting from that agreement."  *Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir. 2010).  A "plaintiff must allege facts with sufficient particularity to show an agreement or a meeting of the minds to violate the plaintiff's constitutional rights." *Davis v. Powell*, 901 F. Supp. 2d 1196, 1217 (S.D. Cal. 2012) (citing *Miller v. California*, 355 F.3d 1172, 1177 n.3 (9th Cir. 2004); *Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir. 1998); *Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989).  Although the Court construes Plaintiffs' *pro se* complaint liberally, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled."  *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).  "Claims based on vague and conclusory allegations, which fail to specify each defendant's role in the alleged conspiracy, are subject to dismissal."  *Cox v. Ashcroft*, 603 F. Supp. 2d 1261, 1271-72 (E.D. Cal. 2009) (citation omitted).

Plaintiffs repeatedly refer to an "Enterprise" conspiracy among the County Defendants to deprive Plaintiffs of their rights.  All such allegations, however, are vague and conclusory.  None of Plaintiffs' allegations suggest there was an agreement or meeting of the minds among the defendants.  For example, Plaintiffs assert that after unspecified

individuals "learn[ed] of Plaintiffs' trial plan" for the administrative hearing, "an immediate coverup commenced." (Doc. 1 ¶ 45.) Plaintiffs provide no allegation regarding which person or persons were actually involved in the alleged "coverup" or what activity constituted this coverup.  Instead, Plaintiffs point out that their settlement efforts fell through when the "plea bargain contrivance" put forward by Borowski "was rejected [by Plaintiffs'] for cause." (*Id.*)  Plaintiffs do not provide any factual allegations suggesting that the proffered settlement was a part of a "coverup" or involved any agreement or meeting of the minds to deprive Plaintiffs of their rights.  This allegation is therefore vague, because it fails to indicate which persons were involved in the coverup or what steps those individuals undertook to cover something up, and conclusory, because it simply states, without giving any factual basis, that "an immediate coverup commenced." (*Id.*)

Plaintiffs also allege that the County Defendants acted "as willing participating members of a racketeering Enterprise engaged in . . . [a] scheme and artifice intended to materially defraud Plaintiffs and others of tangible and intangible property rights . . . ." (Doc. 1¶ 58.)  Similarly, they allege that the County Defendants "did collectively, in manifest bad faith in violation of, but not limited to, 42 U.S.C. §§ 1981, 1983, 1985 & 1986 knowing the action against Plaintiffs was a setup deliberately intended as a retaliatory character assassination revenge tool to impute predetermined guilt for imaginatively presumed infractions . . . , unlawfully threaten, coerce, take property[,]" and so forth. (Doc. 1 ¶ 62.)  These conclusory assertions lack underlying fact-based allegations and are insufficient to demonstrate that a wrongful conspiracy was afoot.  Plaintiffs provide no factual allegations whatsoever that the County Defendants had an agreement or meeting of the minds to deprive Plaintiffs of their rights.

A useful analogue to this case is *Jones v. Town of Quartzsite*, 2015 WL 12551172 (D. Ariz. 2015), *aff'd*, 677 F. App'x 317 (9th Cir. 2017).  The plaintiff in *Jones* was charged with three misdemeanors, which were later dismissed, for violating the Town of Quartzite's zoning code and ordinances.  *Id.* at *1.  These charges rendered the plaintiff unable to continue with needed renovations of her property and causing her to relocate her small

business.  *Id.* at \*2-3.  The plaintiff filed a civil rights action against the town and several town employees.  *Id.* at \*1, 3.  The plaintiff asserted, among other things, that the town and its employees had conspired against her because "[t]here is a very well documented, overwhelmingly supported, clear pattern of intentional, coordinated conspiracy[.]"  *Id.* at \*12 (alterations in original).  The court concluded that these and similar allegations "clearly are insufficient to state a section 1983 conspiracy claim" because there were no "facts showing an agreement or meeting of the minds among Defendants to violate Plaintiff's constitutional rights" and no "facts specifying each, or any, of Defendants' roles in the claimed conspiracy."  *Id.*   The court noted that "the complaint merely refers to 'Defendants,' without distinguishing among them, much less their individual roles in the alleged conspiracy."  *Id.*  The court therefore granted the defendants' motion for judgment on the pleadings and dismissed the action with prejudice.  *Id.* at \*12-13, 17.  Here, as in *Jones*, Plaintiffs make only conclusory conspiracy allegations and do not specify the defendants' roles in the alleged conspiracy.

Another barrier to Plaintiffs' conspiracy claims is "the intracorporate conspiracy doctrine, which bars a claim for conspiracy where the allegation is that an entity conspired with its employees to violate an individual's constitutional rights."  *Donohoe v. Arpaio*, 869 F. Supp. 2d 1020, 1074 (D. Ariz. 2012).  Here, Plaintiffs allege that the County and various County employees conspired to violate Plaintiffs' rights.   The intracorporate conspiracy doctrine prevents such a claim because a "municipality generally cannot conspire with itself."  *Id.* (internal quotation marks omitted).  Even if the alleged conspiracy were not alleged against the County itself, but only as to the various individuals named in the complaint, the intracorporate conspiracy doctrine would still bar the claim.  *Id.* at 1075 ("Wilcox cannot plead around this rule by naming Defendants in their individual capacities and not naming the County in her conspiracy count; the reasoning underlying the intracorporate conspiracy doctrine remains to bar her claims because Defendants were allegedly using the powers of their county offices to commit the acts underlying Plaintiffs' claims for conspiracy.").  The Ninth Circuit has not decided whether the intracorporate

conspiracy doctrine applies to civil rights actions.  *See, e.g.*, *Fazaga v. FBI*, 965 F.3d 1015, 1060 & n.41 (9th Cir. 2020) (qualified immunity barred claim because there is no clearly established Ninth Circuit law on whether "an intracorporate agreement could subject federal officials to liability under § 1985(3)").  Nonetheless, "district courts within this Circuit that have addressed the issue consistently have held that it does apply, including this Court."  *Norton v. Arpaio*, 2015 WL 13759956, *5 (D. Ariz. 2015) (collecting cases).  Because all defendants over which this Court has jurisdiction are Yavapai County or Yavapai County employees, the conspiracy claims are dismissed.  *See, e.g.*, *id.* ("Here, all Defendants are Maricopa County or County employees and the County cannot conspire with its own employees.").

This defect cannot be cured by amendment, so Plaintiffs' conspiracy claims are dismissed without leave to amend.  *Id.*; *Donahoe*, 869 F. Supp. 2d at 1034-35, 1074-75, 1079.

### 3.    *Yavapai County's* Monell *Liability*

The County Defendants argue that Plaintiffs' § 1983 claims must be dismissed under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for failure to allege that the deprivations of Plaintiffs' constitutional rights were the product of a Yavapai County policy, custom, or practice.  (Doc. 16 at 9-11.)

"Section 1983 suits against local governments alleging constitutional rights violations by government officials cannot rely solely on respondeat superior liability."  *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012).  "Instead, plaintiffs must establish that the local government had a deliberate policy, custom, or practice that was the moving force behind the constitutional violation they suffered."  *Id.* (internal quotation marks and brackets omitted).  In order to meet this threshold, a plaintiff must allege sufficient facts under the *Iqbal* pleading standards regarding the specific nature of the alleged custom, policy, or practice.  *Id.* at 637.

As an initial matter, the Court doesn't construe the County Defendants' motion as seeking dismissal of Count One (the count pertaining to the municipal ordinance) under

*Monell*.  That count, unlike the others, is directed at the County alone, and the enactment of an official municipal ordinance would seem to qualify as the creation of an official policy.  In any event, to the extent the County was intending to seek dismissal of Count One of this ground, it may raise that argument in a successive dismissal motion.

As for the remaining counts, on one hand, Plaintiffs allege that members of the alleged "Enterprise," which includes all the named defendants (including the County), "arbitrarily [and] capriciously" prosecuted and adjudicated the zoning action against them "utilizing outrageous retaliatory patterns [and] practices recklessly [and] abusively intended to deliberately infringe Plaintiffs' fundamental civil rights under color of authority of perceived plenary power never intended by custom or law to exist; A.R.S. §§ 11-815 [and] 866 never intended to be utilized as a coercive building permit reissue sales gimmick . . . ."  (Doc. 1 ¶ 7.)  They also allege that the purported "Enterprise" was "dedicated to policing for profit, asset forfeiture, unjust enrichment, excessive fines, unjust punishment and unlawful takings under color of authority of A.R.S. §§ 11-815 [and] 866 . . . ."  (*Id.* ¶ 64.)  At first blush, these types of allegations, liberally construed, could be viewed as alleging that the County had a policy, custom, or practice of abusing its powers under A.R.S. §§ 11-815 and 11-866 to Plaintiffs' detriment.

But the complaint's allegations in this regard do not plead with the requisite specificity the underlying policies, customs, or practices the County had in place.  Perhaps because the complaint relies heavily on the "Enterprise" conspiracy theory of liability, it does not adequately allege how the County itself had a relevant policy, practice, or custom with respect to most (if not all) of the challenged conduct.  For example, although the complaint alleges that the search of Plaintiffs' property on July 17, 2018 involved a "forcible entry trespass" that violated the Fourth Amendment (Doc. 1 ¶ 60), there is no allegation that the County enacted and pursued an official policy of conducting similar searches on other properties.  The complaint also fails to allege how such a policy, custom, or practice was the "moving force" behind the constitutional violations.  *County of Tulare*, 666 F.3d at 636.

- 29 -

Finally, the complaint does not adequately allege how the persons named in their official capacities carried out these policies, customs, or practices.  Although it is true that "the real party in interest in an official-capacity suit is the governmental entity and not the named official," *Hafer v. Melo*, 502 U.S. 21, 25 (1991), Plaintiffs are still required to show the official-capacity defendants' "personal participation in the alleged rights deprivation." *Nichols v. Brown*, 859 F. Supp. 2d 1118, 1137 (C.D. Cal. 2012) (quoting *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002)).  *See also Lucero v. Hensley*, 920 F. Supp. 1067, 1076 (C.D. Cal. 1996) ("Even in their official capacities, however, defendants must somehow be at fault to be liable under Section 1983.") (citing *Rizzo v. Goode*, 423 U.S. 362, 371 (1976)).  The complaint frequently references the activity of the "Enterprise" and contains some fact allegations against the four individual-capacity defendants, but it contains virtually no allegations against the remaining seven official-capacity defendants.  Further, "in an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  *See also* 1 Joseph G. Cook & John L. Sobieski, Civil Rights Actions ¶ 2.03[A][4] (2020) ("[P]roof of an official policy or custom is as essential in suits against municipal agents sued in their official capacities as in suits against municipalities themselves.").  Thus, even as to Borowski, William, Van Haren, and Jacobs in their official capacities, Plaintiffs' failure to allege a County policy, practice, or custom renders the complaint defective.

As such, Plaintiff's claims with respect to the County and the County Defendants named in their official capacities must be dismissed.  Plaintiffs will have leave to amend, however, because this defect could be cured through amendment.[14]

5.    *Immunity For Individual-Capacity Defendants*

The County Defendants contend that each of the four individual-capacity defendants is entitled to immunity.  (Doc. 16 at 5-9.)  Jacobs and Van Haren, the County Defendants

---

[14]    The County Defendants argue that all of the official-capacity defendants' names should be stricken from the complaint because the County is the true party in interest.  (Doc. 16 at 11-12.)  The Court disagrees.  Plaintiffs are permitted to bring suit against persons in their official capacity, so long as they properly allege each individual's fault.

argue, are entitled to absolute judicial immunity because they are County hearing officers. (*Id.* at 5-6.)  The County Defendants further argue that Borowski and Williams are shielded by absolute prosecutorial immunity "for their role as prosecutors in the underlying civil enforcement action." (*Id.* at 6-7.)  The County Defendants also argue that the individual-capacity defendants are entitled to qualified immunity, because the complaint "is devoid of any non-conclusory factual allegations as to how any of the individual defendants could have reasonably believed their actions were in violation of plaintiffs' Fourth, Fifth, Eighth and Fourteenth amendment rights." (*Id.* at 8.)  In response, Plaintiffs argue that immunity is unavailable because the individual-capacity defendants acted as part of an enterprise to injure Plaintiffs' constitutional rights in bad faith.  (Doc. 21 at 7-9.)

### a.    Hearing Officers

"It is well settled that judges and prosecutors are entitled to absolute immunity." *Mishler v. Clift*, 191 F.3d 998, 1003 (9th Cir. 1999).  This absolute immunity "reflects the long-standing 'general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'" *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004) (quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347 (1871)).  "Courts have extended absolute judicial immunity from damage actions under 42 U.S.C. § 1983 not only to judges but also to officers whose functions bear a close association to the judicial process." *Demoran v. Witt*, 781 F.2d 155, 156 (9th Cir. 1985).  "Under certain circumstances, absolute immunity is also extended to agency representatives performing functions analogous to those of a prosecutor or a judge" in order to assure "the independent functioning of . . . officials acting in a quasi-judicial capacity." *Olsen*, 363 F.3d at 923.  "Absolute immunity provides protection from personal liability even for clearly erroneous or malicious behavior." *Mason v. Arizona*, 260 F. Supp. 2d 807, 820 (D. Ariz. 2003).

Absolute immunity was extended to county zoning board members acting in a quasi-judicial capacity in *Buckles v. King County*, 191 F.3d 1127, 1136 (9th Cir. 1999).  In that

case, the Ninth Circuit reasoned that "[l]and use decisions are often contentious and involve conflicting interests and policies.  Permitting suits against the quasi-judicial decision makers would discourage knowledgeable individuals from serving as Board members and thwart the orderly process of judicial review.  Absolute immunity for the Board members serves the broader public interest in having people perform these functions without fear of having to personally defend their actions in civil damages lawsuits." *Id.* (internal quotation marks omitted).  *See also Burnell v. Marin Humane Soc'y*, 2015 WL 4089844, *3 (N.D. Cal. 2015) ("Plaintiffs sue Burnham solely in his capacity as an administrative hearing officer; as he made findings of fact and conclusions of law in this regard and therefore served an adjudicative role, he is entitled to absolute judicial immunity.").

A public official seeking absolute immunity bears the burden to show that "public policy requires an exemption of that scope." *Buckles*, 191 F.3d at 1133.  The "following characteristics of the judicial process [are] sufficient to render the role of the administrative law judge 'functionally comparable' to that of a judge: an adversarial proceeding, a decision-maker insulated from political influence, a decision based on evidence submitted by the parties, and a decision provided to the parties on all issues of fact and law." *Id.* at 1134 (quoting *Butz v. Economou*, 438 U.S. 478, 513 (1978)).  Other indicia of a sufficiently judicial process include "the importance of precedent and the right to appeal," but these characteristics are not "dispositive." *Id.*  The key inquiry is whether the adjudication contains "'*many* of the same safeguards as are available in the judicial process.'" *Id.* (quoting *Butz*, 438 U.S. at 513).

The December 11, 2018 hearing satisfies the inquiry set out in *Buckles*, as do the roles of Van Haren and Jacobs with respect to that hearing, entitling them to absolute immunity.  Plaintiffs' complaint makes clear that Jacobs and Van Haren are being sued because of their roles as hearing officers.  (Doc. 1 ¶¶ 20-21, 44, 48-49, 52, 54.) Specifically, the complaint alleges that Jacobs committed wrongdoing by opening and commencing administrative proceedings against Plaintiffs and in upholding the

administrative violation (*id.* ¶¶ 20, 44, 54)[15] and that Van Haren wronged Plaintiffs in his conduct during the administrative proceeding (*id.* ¶¶ 21, 48-49, 52).  The complaint alleges, as was the case in *Buckles*, that the hearing officers "adjudicate[] land use disputes and function[] as a quasi-judicial body."  *Buckles*, 191 F.3d at 1134.  Additionally, Plaintiffs' hearing was adversarial—Plaintiffs attended the hearing in-person and made their case, while the County's own representatives took contrary positions.  (Doc. 1 ¶ 48.)  It is also relevant that Yavapai County hearing officers are appointed by the County Board of Supervisors.  A.R.S. § 11-815(G).  Although hearing officers do not appear to be subject to term limits or other methods of political insulation, their separateness from the Board of Supervisors and YCDS means they are sufficiently insulated from political influence.  After all, hearing officers are creatures of state statute, A.R.S. § 11-815(E)-(G), and independently determine responsibility for zoning violations.  (Doc. 16 at 29-33 [rules of procedure for Yavapai County Hearing Officers].)  Their office is distinct from YCDS.  (*See, e.g.*, Doc. 1-1 at 3 [not listing the hearing officers as among the departments of YCDS].)[16]

The remaining factors set out in *Buckles* likewise indicate that the County hearing officers enjoy absolute immunity.  Their decision is based on evidence submitted by both parties and a final decision is issued to the parties on fact and law.  A.R.S. § 11-815(F).

---

[15]     The complaint alleges, in conclusory fashion, that Jacobs upheld "the Van Haren determination as specifically ordered by YCDS Williams based on believed false swearing, testilying [sic] and outright perjury . . . ."  (Doc. 1 ¶ 54.)  Even accepting this allegation's accuracy and reading it in the light most favorable to Plaintiffs, it does not change the analysis with respect to absolute immunity because immunity attaches "even if [the] exercise of authority is flawed by the commission of grave procedural errors."  *Mishler*, 191 F.3d at 1006.

[16]     *Compare Cleavinger v. Saxner*, 474 U.S. 193, 203-04 (1985) ("Surely, the members of the [prison disciplinary] committee, unlike a federal or state judge, are not 'independent'; to say that they are is to ignore reality.  They are not professional hearing officers, as are administrative law judges.  They are, instead, prison officials, albeit no longer of the rank and file, temporarily diverted from their usual duties.  They are employees of the Bureau of Prisons and they are the direct subordinates of the warden who reviews their decision.  They work with the fellow employee who lodges the charge against the inmate upon whom they sit in judgment.  The credibility determination they make often is one between a co-worker and an inmate.  They thus are under obvious pressure to resolve a disciplinary dispute in favor of the institution and their fellow employee.") (citation omitted).

Finally, although precedent does not appear to play a role in the hearing officers'
adjudication, their decisions are subject to appeal, first to the Board of Supervisors and
then to Arizona Superior Court.  A.R.S. §§ 11-815(G), 12-901–914.

For these reasons, hearing officers Jacobs and Van Haren are entitled to absolute
immunity in this action.

### b.    Borowski And Williams

The County Defendants argue that Borowski and Williams are shielded by absolute
immunity because their conduct as alleged in the complaint is prosecutorial in nature.
(Doc. 16 at 6-7.)   Alternatively, the County Defendants assert that qualified immunity
shields Borowski and Williams from suit.  (*Id.* at 7-9.)   They argue that Plaintiffs fail to
allege a connection between Borowski or Williams and the alleged misconduct and that the
allegations in the complaint actually establish that Plaintiffs received due process, that no
taking occurred, and that there was no Eighth Amendment violation (because the judgment
provides a mechanism for the fine to be waived completely).  (*Id.*)

Qualified immunity, like absolute immunity, is "an immunity from suit rather than
a mere defense to liability."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal
quotation marks omitted).  It should, thus, be resolved "at the earliest possible stage in
litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).  *See also Keates v. Koile*, 883 F.3d
1228, 1234-35 (9th Cir. 2018) (acknowledging that "[d]etermining claims of qualified
immunity at the motion-to-dismiss stage raises special problems for legal decision making"
but clarifying that, despite those special problems, "a district court [may] dismiss[] a
complaint for failure to state a claim based on a qualified immunity defense . . . [if] the
complaint [fails to] allege[] sufficient facts, taken as true, to support the claim that the
officials' conduct violated clearly established constitutional rights of which a reasonable
officer would be aware in light of the specific context of the case") (citations and internal
quotation marks omitted).

"Qualified immunity shields federal and state officials from money damages unless
a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional

right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).  A government official's conduct violates "clearly established" law when "'the contours of a right are sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Id.* at 741 (citation and brackets omitted).  Although there need not be a "case directly on point," "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.*  In other words, the case law must "have been earlier developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law." *Shafer*, 868 F.3d at 1117.  *See also Hamby v. Hammond*, 821 F.3d 1085, 1095 (9th Cir. 2016) ("[T]he farther afield existing precedent lies from the case under review, the more likely it will be that the officials' acts will fall within that vast zone of conduct that is perhaps regrettable but is at least arguably constitutional.  So long as even that much can be said for the officials, they are entitled to qualified immunity."); *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) ("This Court has repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality.") (internal quotation marks omitted).

"Once the defense of qualified immunity is raised by the defendant, the plaintiff bears the burden of showing that the rights allegedly violated were 'clearly established.'" *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1157 (9th Cir. 2000).  *See also Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991) ("The plaintiff bears the burden of proof that the right allegedly violated was clearly established at the time of the alleged misconduct.") (citation omitted).[17]  Although it "is often beneficial" to begin the analysis by addressing whether a

---

[17]     Although *LSO* and *Romero* place the burden on the plaintiff, other Ninth Circuit opinions hold that "[q]ualified immunity is an affirmative defense that the government has the burden of pleading and proving." *Frudden v. Pilling*, 877 F.3d 821, 831 (9th Cir. 2017). These opinions are difficult to reconcile. *See generally Slater v. Deasey*, 943 F.3d 898, 909 (9th Cir. 2019) (Collins, J., dissenting from denial of rehearing en banc) ("The panel committed . . . error in suggesting that Defendants bear the burden of proof on the disputed qualified-immunity issues presented in this appeal. . . .  [T]he applicable—and well-

statutory or constitutional right has been violated, district courts are vested with discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

The complaint alleges that Borowski and Williams committed wrongdoing in their roles at YCDS officials charged with prosecuting Plaintiffs' zoning case.  (Doc. 1 ¶¶ 18-19, 39, 41, 44-45, 49, 51, 54.)  Plaintiffs became acquainted with Borowski following the July 17, 2018 inspection of their property, after Plaintiffs reached out to YCDS with phone and email queries.  (*Id.* ¶ 39.)  Borowski then filed the notice of violation commencing the administrative case against Plaintiffs, after Plaintiffs insisted on a formal hearing to resolve the alleged zoning violations.  (*Id.* ¶¶ 39-41; Doc. 1-1 at 7.)  Both Borowski and Williams participated in settlement negotiations with Plaintiffs, agreeing to extend their building permits for two years, but then the settlement talks broke down when Plaintiffs refused to accept YCDS's proffered acknowledgement of violation.  (Doc. 1 ¶¶ 44-45; Doc. 1-1 at 8-9.)  After judgment was rendered in the administrative proceeding, Borowski sent Plaintiffs a notice of noncompliance, which Plaintiffs allege was premised on "false swearing." (Doc. 1 ¶ 51; Doc. 1-1 at 10-11.)  The final upholding of the judgment on May 14, 2019 was "specifically ordered" by Williams.  (Doc. 1 ¶ 54.)  These are the sole allegations against Borowski and Williams individually.

Plaintiffs have failed to demonstrate that Borowski's and Williams's conduct violated clearly established law.  Plaintiffs argue that Borowski and Williams's "bad faith misconduct" is an absolute bar to qualified immunity, but they do not point to any clearly established law (or indeed any case at all) that "would have provided fair warning to Defendants that their actions were unconstitutional." *Maples v. Pinal County*, 453 F. Supp. 3d 1314, 1321 (D. Ariz. 2020).  In the absence of any legal authority holding that conduct

---

settled—rule [in the Ninth Circuit] is that '[t]he plaintiff bears the burden of proof that the right allegedly violated was clearly established at the time of the alleged misconduct.'") (citation and emphases omitted).

akin to that undertaken by Borowski and Williams violates Plaintiffs' clearly established constitutional rights, qualified immunity cannot be overcome.  *Tuuamalemalo v. Greene*, 946 F.3d 471, 477 (9th Cir. 2019) ("The right must be settled law, meaning that it must be clearly established by controlling authority or a robust consensus of cases of persuasive authority.").  The claims against Borowski and Williams in their individual capacities must be dismissed.  *See, e.g.*, *Santa Maria City Firefighters Union v. City of Santa Maria*, 2020 WL 3050775, *3 (C.D. Cal. 2020) ("Plaintiffs have not identified preexisting precedent clearly establishing that a reasonable official in the individual Defendants' shoes would have known that their particular conduct was unlawful.  Qualified immunity therefore shields the individual Defendants from liability . . . ."); *Kelly v. Manriquez*, 2011 WL 13142093, *3 (D. Ariz. 2011) ("[B]ecause Plaintiff bears the burden of establishing that the right at issue was clearly established, and he has not carried that burden, the Court must grant Defendant's motion to dismiss based on qualified immunity.").

6. *Punitive Damages*

The County Defendants also move to dismiss Plaintiffs' request for punitive damages, citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981), which holds that "a municipality is immune from punitive damages under 42 U.S.C. § 1983." (Doc. 16 at 12.)  The Court agrees that Plaintiffs may not recover punitive damages against the County or any of the official-capacity defendants.  Additionally, with the dismissal of all of the individual-capacity defendants from this action, Plaintiffs' path to recovering punitive damages is foreclosed.  Plaintiffs' request for punitive damages is therefore dismissed.  *Wilson v. Maricopa County*, 463 F. Supp. 2d 987, 998 (D. Ariz. 2006) ("Punitive damages under § 1983 are not recoverable against a municipality or an officer sued in his official capacity, but are recoverable against officials sued in their individual capacities.").

III.   Plaintiffs' Motion For Clarification And Remedial Action

On December 2, 2020, the Court terminated the ten unknown defendants because Plaintiffs failed to serve them within the period prescribed by Federal Rule of Civil

Procedure 4(m).   (Doc. 38.)   Plaintiffs then filed a "motion for clarification/remedial action" regarding this order.   (Doc. 39.)   Plaintiffs state that to the extent the Court terminated the "John Doe/Jane Doe entities X 10 yet to be identified" listed in their complaint, then "Plaintiffs have no objection" to the order.   (*Id.* at 3.)   Plaintiffs aver, however, that if the Court's termination order "was intended to pertain to a party classification of defendants yet-to-be-served and/or added as additional party's [sic] via Plaintiffs' Amended Supplemental Complaint (Doc 23) pending action, that is a different matter altogether."   (*Id.* at 3 ¶¶ 4-5.)   In other words, Plaintiffs object to the Court's December 2, 2020 order to the extent it prejudices their ability to add additional, as-yet unnamed defendants.   Plaintiffs also ask the court to add four additional individual County-affiliated persons and the Arizona Commission on Judicial Conduct as defendants under Rule 19 "or appropriate discretionary authority."   (*Id.* at 7 ¶ 14.)

The Court now clarifies its December 2, 2020 ruling.   The December 2, 2020 ruling simply terminated the unknown, unserved party defendants.   It does not prevent the naming of additional parties in an amended complaint.   Because Plaintiffs are being granted, as part of this order, leave to amend their original complaint, they may name additional parties as part of that amendment.   The Court declines at this time, however, to join the additional parties proposed by Plaintiffs.   Instead, Plaintiffs may file an amended complaint naming additional parties, but the Court cautions Plaintiffs to be mindful of the analysis set out in this Order when determining whether to add such additional parties.

IV.   Plaintiffs' Motion To Dismiss Mallory

On January 4, 2021, Plaintiffs moved to dismiss from this action Mary Mallory, a Yavapai County Supervisor sued in her official capacity.   (Docs. 40, 41.)   Plaintiffs assert that Mallory "was not affiliated in any way with county affairs when the events and occurrences grounding Plaintiffs' Complaint transpired" because she has only recently been elected to the Yavapai County Board of Supervisors.   (Doc. 40 ¶ 4.)

The deadline to file a response to this motion has expired and no party has responded.   Plaintiffs' unopposed motion is therefore granted.   Mallory is terminated.

V.     <u>Plaintiffs' Motion For Judicial Notice</u>

On January 8, 2021, Plaintiffs filed a motion for judicial notice informing the Court that they believe certain parties—named and unnamed in this action—have committed an unspecified act or acts of fraud regarding Plaintiffs' and others' land use practices and before this Court.  (Doc. 42.)  Plaintiffs ask only that the Court take judicial notice of the circumstances alleged and add that their amended complaint "will include the State of Arizona and the Arizona Commission on Judicial Conduct and select other entities as intended parties responsible for the alleged fraud upon the court."  (*Id.* ¶ 10.)

As the Court explained in prior orders, "[i]f the Court cannot understand [Plaintiffs'] motion, the Court cannot grant it."  (Doc. 37 at 2.)  The Court cannot understand what facts Plaintiffs seek to have judicially noticed.  As for the potential addition of more defendants in Plaintiffs' amended complaint, the Court again advises Plaintiffs to carefully review this Order's conclusions with respect to Eleventh Amendment sovereign immunity, statutes of limitations, conspiracy, failure to state a claim under §§ 1981, 1983, and 1985, and absolute and qualified immunity before making a final decision as to which parties (if any) should be added.

Accordingly,

**IT IS ORDERED** that:

1.     The State Defendant's motion to dismiss (Doc. 18) is **granted**.  Carlton Woodruff is dismissed.

2.     The County Defendants' motion to dismiss (Doc. 16) is **granted in part and denied in part**, as follows.  The sole remaining count is Count One, which is asserted only against the County.  All remaining counts and defendants are dismissed.

3.     Plaintiffs are granted leave to amend, with limitations.  Specifically, because the dismissal as to the State Defendant (Carlton Woodruff) and as to the County Defendants sued in their individual capacities (Van Haren, Jacobs, Borowski, and Williams) was without leave to amend, Plaintiffs may not seek to add new claims against those defendants.  Nor may Plaintiffs seek to add claims against Mallory.  Additionally, because the dismissal

of all state-law claims was without leave to amend, as was the dismissal of all claims under 42 U.S.C. §§ 1981, 1985, and 1986, Plaintiffs may not seek to reassert those claims. Finally, Plaintiffs may not seek to assert any conspiracy claims premised on alleged conspiracies solely between the County Defendants.  Otherwise, Plaintiffs may amend their complaint in an attempt to resolve the other deficiencies identified in this Order and/or to add the other new parties discussed in recent filings (but Plaintiffs are, yet again, cautioned that they should review the analysis in this Order when evaluating whether to add those parties).

4. If Plaintiffs choose to attempt to amend their complaint, their first amended complaint must be filed within 30 days of the entry date of this Order.  Plaintiffs must, consistent with LRCiv 15.1(a), attach a redlined version of the pleading as an exhibit. Although the Court appreciates that providing a redlined version may prove technically challenging, it is crucial that Plaintiffs comply with this requirement in light of the length of the current complaint and the limited nature of the leave to amend that is being granted.

5. The County is granted leave to file a successive motion to dismiss Count One.  That motion is not due at this time.  If Plaintiffs file a first amended complaint within 30 days of this Order, as authorized in the preceding paragraph, the County may include any dismissal arguments directed toward Count One in its response to the amended pleading.  If Plaintiffs do not file a first amended complaint within 30 days of this Order, the County's successive motion to dismiss Count One is due within 45 days of this Order.

6. Plaintiffs' motion for clarification and remedial action (Doc. 39), to the extent it seeks the joinder of additional parties, is **denied** without prejudice.

7. Plaintiffs' motion to dismiss Mallory from this action (Doc. 40) is **granted**. Mallory is terminated from this action.

…

…

…

…

8.      Plaintiffs' motion for judicial notice (Doc. 42) is **denied** without prejudice.

Dated this 1st day of February, 2021.

_____
Dominic W. Lanza
United States District Judge