**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Earl M. Hasbrouck, et al., | No. CV-20-08112-PCT-DWL |
| Plaintiffs, | **ORDER** |
| v. | |
| County of Yavapai, et al., | |
| Defendants. | |

Plaintiffs Earl and Donna Hasbrouck ("Plaintiffs") are a married couple bringing this action *pro se*.  Plaintiffs' allegations arise from a series of disputes stretching back to the late 1990s concerning a parcel of real property they own in Yavapai County ("the County").  In their original complaint, Plaintiffs asserted an array of federal and state claims against an array of defendants, including the County and various local and state officials.  (Doc. 1.)

In February 2021, the Court dismissed all of Plaintiffs' claims except their claim in Count One against the County.  (Doc. 43 at 39.)  Count One of the original complaint alleged that the County's passage of a zoning ordinance that changed property storage regulations constituted, *inter alia*, a bill of attainder and an *ex post facto* law, in violation of various provisions of the United States and Arizona Constitutions.  (Doc. 1 ¶ 56.)

As part of the dismissal order, the Court authorized Plaintiffs to amend their complaint "with limitations" and authorized the County to move to dismiss the amended pleading.  (Doc. 43 at 39-40.)  Plaintiffs then submitted their First Amended Complaint

("FAC").  (Doc 51.)

Now pending before the Court is the County's successive motion to dismiss.  (Doc. 52.)  For the following reasons, the motion is granted and this action is terminated.

## BACKGROUND

I.    Factual Background

The background facts of this case are set out in detail in the February 1, 2021 order. (Doc. 43 at 2-5.)  The following facts, which are relevant to the County's pending motion and are assumed true for purposes of that motion, are derived from the FAC and documents subject to judicial notice.

In 1996, Plaintiffs purchased and moved to a 0.65-acre parcel[1] in Ash Fork, Yavapai County, Arizona.  (Doc. 51 ¶¶ 24, 26.)  Following their arrival in Yavapai County, Plaintiffs planned to remodel their home and construct new structures on the parcel in accordance with plans submitted to and orally approved by County officials.  (*Id.* ¶ 24.) However, personal circumstances prevented Plaintiffs from beginning their remodeling project in earnest until 2001.  In the meantime, they began using twenty-foot steel shipping containers for storage on their lot.  (*Id.* ¶¶ 31-34.)

From roughly 2001 to 2007, Plaintiffs had conflicts with neighbors and County officials.  (*Id.* ¶ 36.)  Among other things, Plaintiffs (1) complained to Yavapai County Development Services ("YCDS") about misconduct occurring at a neighboring property, which led to demolition occurring on that property at County expense; (2) joined "other dissenting community members" in protesting a newly drilled noncompliant well; and (3) were subject to the County's "anonymous complaint strategy" regarding "debris" stored on their property.  (*Id.*)  Plaintiffs contend these spats partly led to their subsequent mistreatment by "trigger[ing] additional bureaucratic revenge."  (*Id.*)

---

[1]    The County provides public records showing that parcel number 302-14-028A, which is how Plaintiffs identify their parcel in the FAC (Doc. 51 ¶ 24), is approximately .65 acres.  (Doc. 52-1 at 16.)   Plaintiffs do not dispute the authenticity of (or otherwise object to) this public record, which the Court may judicially notice without converting the motion to dismiss into a motion for summary judgment.  *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).

In 2010, a YCDS official asked Plaintiffs to rearrange the steel storage containers on their lot.  (*Id.* ¶ 37.)  Plaintiffs complied without understanding what, if any, basis YCDS had for making such a request.  (*Id.*)

On November 1, 2017, the Yavapai County Board of Supervisors met to discuss, among other things, amendments to its zoning ordinances that were consolidated as County Zoning Ordinance Amendment HA #H17032 ("H17032").  (Doc. 52-1 at 3-5.)  The measure passed by a three to one vote, with one Supervisor opposing and one abstaining.  (*Id.* at 8-9.)

H17032 made four changes to the County's zoning regulations.  First, Section 301's definition of "steel storage container" was amended to exclude refurbished sea-going cargo and freight containers.  (*Id.* at 4.)  Second, Section 413 was amended to allow—on parcels no smaller than ten acres—the installation of certain storage structures before construction of a primary use (*e.g.*, a house).  (*Id.*)  Third, Section 501 was amended to avoid the need for a construction permit, as would typically be required, if the property was zoned under Section 413 and the new exception applied.  (*Id.*)  Fourth, Section 564 imported the new definition from Section 301, required construction of primary use before steel storage containers would be allowed—on parcels no smaller than two acres—and altered the overall limitation from a single storage unit to no more than 400 square feet of storage.  (*Id.* at 4-5.)

On July 17, 2018, Plaintiffs returned home to discover that a "Notice of Violation" placard had been placed on their property.  (Doc. 51 ¶ 40.)  Neighbors reported seeing YCDS personnel "conducting a warrantless search" of the premises and taking photographs.  (*Id.*)  Plaintiffs later received a follow-up letter from YCDS detailing alleged zoning infractions, including improperly storing vehicles and construction materials on the property.  (*Id.* ¶ 41.)  Plaintiffs subsequently demanded an administrative hearing to resolve the alleged infractions.  (*Id.* ¶ 42.)

On August 24, 2018, YCDS Land Use Director Rebecca Borowski ("Borowski") filed a notice of violation against Plaintiffs, which commenced administrative proceedings.

(*Id.* ¶ 43; Doc. 1-1 at 7.)  The parties participated in a "trial" or preliminary hearing on October 9, 2018, during which Plaintiffs "objected to but complied faithfully with the biased Hearing Office Rules of Discovery clearly intended to provide prosecutorial advantage, [with] YCDS refusing to participate."  (Doc. 51 ¶ 45)

From there, Plaintiffs engaged in settlement talks with Borowski and YCDS Department Head David Williams ("Williams"), who were "acting in their official capacity as joint prosecutors on behalf of Yavapai County" in the administrative action.  (*Id.* ¶ 46.) Borowski and Williams "admitted their procedural error in bringing the action in the fraudulent manner done and agreed to extend [Plaintiffs'] original building permits for two years . . . ."  (*Id.*)  Hearing officer Larry C. Jacobs ("Jacobs") then officially opened proceedings for the record, "made the [C]ounty's settlement offer a matter of record," and acknowledged receipt of Plaintiffs' plan for the administrative hearing.  (*Id.*)  "Plaintiffs were subsequently fined $100 . . . ."  (*Id.*)

Settlement talks started to break down when County officials learned about Plaintiffs' plan to identify at trial "the government entities responsible for instigating and maliciously pursuing the clearly fraudulent charges."  (*Id.* ¶ 47.)  According to Plaintiffs, "an immediate coverup commenced."  (*Id.*)  The County ultimately sent Plaintiffs an acknowledgment of violation that Plaintiffs refused to sign because they considered it a "contrivance clearly intended to impute guilt."  (*Id.*; Doc. 1-1 at 8-9.)  At this point, efforts to settle effectively failed.  Plaintiffs then filed an application and motion for default, papers that "remain blatantly ignored yet today."  (Doc. 51 ¶ 48.)  The original November 6, 2018 trial date "was vacated at Yavapai County['s] whim."  (*Id.* ¶ 49.) Plaintiffs did not have an opportunity to object.  (*Id.*)

On December 11, 2018, an administrative hearing took place.  (*Id.* ¶ 50.)  Plaintiffs allege they were treated unjustly by the presiding hearing officer, Peter Van Haren ("Van Haren"), in "what was clearly a setup."  (*Id.*)  Van Haren ordered Plaintiffs to sit quietly during the hearing, not allowing them to object orally, and two sheriff's deputies sat behind Plaintiffs during the first half of the proceedings.  (*Id.*)  According to Plaintiffs, the

evidence used during the hearing was "surprise hearsay." (*Id.*)  After the hearing, Van Haren fined Plaintiffs $100 and ordered them to (1) remove all disallowed storage items, construction material, commercial vehicles, and "general debris" from the property, or screen those "items from view with an approved permitted screening method"; (2) "obtain an issued permit to remove or retain all unpermitted construction"; and (3) "contact the land use specialist for an on-site compliance inspection" by January 20, 2019. (*Id.*)  If the inspection found that the conditions of compliance were not met, a civil penalty of $7,500 would be imposed.  (*Id.*)

Plaintiffs tried to comply with Van Haren's order by selling off the equipment that was stored on their property, leading to a "severe" financial loss. (*Id.* ¶¶ 51-52.)  Plaintiffs also sought to appeal the order, but their appeal was denied when they failed to remit the required $440 fee.  (*Id.* ¶¶ 50-52; Doc. 16 at 35.)

On April 4, 2019, Borowski sent Plaintiffs a notice of non-compliance based on a purported March 1, 2019 property inspection.  (Doc. 51 ¶ 53; Doc. 1-1 at 10-11.)  On April 26, 2019, Plaintiffs complained about the notice of non-compliance to the County hearing office, the County Clerk, and the Arizona Commission on Judicial Conduct. (Doc. 51 ¶ 54; Doc. 1-1 at 12-14.)

On May 14, 2019, "final judgment was rendered" in the County hearing, with Jacobs upholding Van Haren's determination, "as specifically ordered by" Williams. (*Id.* ¶ 58.)

II.   <u>Procedural Background</u>

On May 14, 2020, Plaintiffs initiated this action by filing the complaint.  (Doc. 1.)

On August 13, 2020, Plaintiffs sought leave to amend the complaint.  (Docs. 12, 13.)

On August 17, 2020, the Court ordered Plaintiffs to file their proposed amended complaint in accordance with Local Rule 15.1.  (Doc. 15.)  Plaintiffs then attempted to amend or supplement the complaint many times, but each attempt violated the local rules or the Court's orders.  (Docs. 17, 22-23, 28, 31-32.)  Eventually, the Court ordered that no

amended complaint be filed before the Court's resolution of the pending motions to dismiss.  (Doc. 33.)

On August 18, 2020, the County Defendants filed a motion to dismiss.  (Doc. 16.)  The motion later became fully briefed.  (Docs. 20, 21.)

On August 24, 2020, the State Defendant filed a motion to dismiss.  (Doc. 18.)  The motion later became fully briefed.  (Docs. 24, 25.)

On February 1, 2021, the Court dismissed all defendants and counts except Count One against the County.  (Doc. 43 at 39-40.)  The Court authorized Plaintiffs to amend the complaint "with limitations" and authorized the County to move to dismiss the amended pleading.  (*Id.*)

On April 7, 2021, Plaintiffs filed the FAC.  (Doc. 51.)

On April 27, 2021, the County filed the pending motion to dismiss the FAC.  (Doc. 52.)  The motion later became fully briefed.  (Docs. 53, 54.)

On July 6, 2021, Plaintiffs attempted to file a Second Amended Complaint without the Court's permission and in violation of Local Rule 15.1.  (Doc. 55.)

On July 8, 2021, the Court struck the Second Amended Complaint and stated that the pending motion to dismiss the FAC would be resolved in due course.  (Doc. 56.)

## DISCUSSION

I.   Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party."  *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144-45 (9th Cir. 2013).

Legal conclusions couched as factual allegations are not entitled to the presumption

of truth.  *Iqbal*, 556 U.S. at 678-79 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Id.* at 679.

The *Iqbal* pleading standard applies to *pro se* complaints, but they "must be held to less stringent standards than formal pleadings drafted by lawyers."  *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).  Although entitled to "great leeway," a pro se litigant's pleadings "nonetheless must meet some minimum threshold in providing a defendant with notice of what it is that it allegedly did wrong."  *Brazil v. U.S. Dep't of Navy*, 66 F.3d 193, 199 (9th Cir. 1995).

II.   Analysis

In the February 1, 2021 order, the Court authorized Plaintiffs to amend the complaint but ordered Plaintiffs not to reassert claims against certain parties or any "state-law claims," "claims under 42 U.S.C. §§ 1981, 1985, and 1986," or "conspiracy claims premised on alleged conspiracies solely between the County Defendants."  (Doc. 43 at 39-40.)  The Court also ordered Plaintiffs to attach, consistent with Local Rule 15.1(a), a redlined version of the amended pleading as an exhibit.  (*Id.* at 40.)  As to this requirement, the Court explained: "Although the Court appreciates that providing a redlined version may prove technically challenging, it is crucial that Plaintiffs comply with this requirement in light of the length of the current complaint and the limited nature of the leave to amend that is being granted."  (*Id.*)

Plaintiffs violated that order.  The FAC does not include a redlined version of the pleading.  And although the FAC no longer asserts claims against dismissed parties, it continues to assert barred claims.  (*See, e.g.*, Doc. 51 ¶ 61 ["Defendant Yavapai County did . . . intentionally violate the civil rights of Plaintiffs Earl & Donna Hasbrouck in violation of . . . 42 U.S.C. §§ 1981 . . . 1985 & 1986 . . . ."].)

Plaintiffs apparently acknowledge that these claims are inoperative—they describe the County's "provocative dissent" as "futile" because "Plaintiffs First Amended

Complaint was propounded under protest."   (Doc. 53 at 4.)   The Court interprets this statement, juxtaposed with Plaintiffs' earlier statements that "FRCP rule precedent declares that any amended complaint completely replaces the original" and "Plaintiffs wish to move the action forward under protest for finalization of Count One" (Doc. 51 ¶¶ 2(a), 2(g)), to mean that Plaintiffs reasserted all claims in the FAC in an unnecessary effort to preserve them for appeal.   At any rate, all reasserted claims barred by the Court's February 1, 2021 order are now summarily dismissed, regardless of Plaintiffs' motives in reasserting them.

This leaves paragraph 62 of the FAC, which appears to reassert Count One of the original complaint with minor changes.   In a nutshell, Plaintiffs assert that H17032 violates constitutional prohibitions against *ex post facto* laws and bills of attainder, as well as the Fourth, Fifth, Eighth, and Fourteenth Amendments.   (*Id.* ¶ 62.)   Importantly, Plaintiffs do not object to the County's zoning regime as a whole.   To the contrary, they have been extremely clear that they only object to H17032, which, as discussed above, amended Sections 301, 413, 501, and 564 of the zoning ordinances.

Given this backdrop, Plaintiffs' claims must be dismissed for lack of standing, which "is an essential and unchanging part of the case-or-controversy requirement of Article III.   For that reason, both the Supreme Court and this court have held that whether or not the parties raise the issue, federal courts are *required* sua sponte to examine jurisdictional issues such as standing." *D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1035 (9th Cir. 2008) (citations and internal quotation marks omitted).   For standing purposes, a plaintiff must establish he or she has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016).

As discussed, H10732 amends regulations that apply to properties larger than two, or ten, acres.   But here, it is uncontested that Plaintiffs' property is smaller than one acre. If H10732 does not affect Plaintiffs, it cannot injure them.   Thus, Plaintiffs cannot establish causation and lack standing to assert their various challenges.

Although the absence of standing alone requires dismissal, the Court will proceed to explain why Plaintiffs' claims also fail on the merits.[2]  As an initial matter, to the extent Plaintiffs are seeking to sue the County under 42 U.S.C. § 1983 based on an alleged violation of the *Arizona* Constitution,[3] such a claim is not cognizable.  *Campbell v. Burt*, 141 F.3d 927, 930 (9th Cir. 1998); *Ybarra v. Bastian*, 647 F.2d 891, 892 (9th Cir. 1981).

Turning to Plaintiffs' federal theories, they assert that "the evidence will show that Yavapai County did . . . enact Yavapai County Ordinance No. HA H-17032 . . . in violation of the U.S. Constitution Article I, §§ 9 . . . ."  (Doc. 51 ¶ 62.)  They elaborate that the ordinance "mak[es] it a criminal offense . . . to possess [shipping] containers on site and in use since or about 1996 on tracts of land of less than ten acres in size."  (*Id.*)  The Court construes this as a claim that H10732 constitutes an unconstitutional *ex post facto* law.

At common law and around the time of the framing of the United States Constitution, many understood the term *ex post facto* to "embrace all respective laws, or laws governing or controlling past transactions, whether . . . of a civil or criminal nature." 3 J. Story, Commentaries on the Constitution of the United States 1339 (1833).  But in 1798, the Supreme Court clarified that the Constitution prohibits "every law that makes an action, done before the passing of the law, and which was innocent when done, *criminal*; and punishes such action."  *Calder v. Bull*, 3 U.S. 386, 390 (1798) (emphasis added).  That is, "the prohibition extends to criminal, not civil, cases . . . ."  *Id.* at 399 (Iredell, J., concurring).  *See also Peugh v. United States*, 569 U.S. 530, 538 (2013) (embracing *Calder*

---

[2]  This analysis is provided both in an abundance of caution and to explain why granting leave to amend would be futile.

[3]  Paragraph 62 of the FAC alleges that the County's efforts related to H10732 were "all in violation of the U.S. Constitution Article I, §§ 9 & 10; the Fourth, Fifth, Eighth and Fourth Amendment(s) & the Arizona Constitution, Article II, Section 25."  Elsewhere in the FAC, Plaintiffs explain that they "bring this action . . . pursuant to 42 U.S.C. §§ 1983, 1985, 1986 & 1988," seek "remedy, vindication & redress for equal rights violations and/or deprivations of civil rights secured by the Constitution of the United States," and also "invoke supplemental jurisdiction pursuant to 28 U.S.C. § 1367 seeking remedy & redress from unfair and unjust [violations of] state law."  (Doc. 51 ¶¶ 10, 11, 13.)  It is possible to construe these allegations, when read together, as including a § 1983 claim based on alleged violations of the Arizona Constitution.  Alternatively, if Plaintiffs were attempting to assert some sort of standalone state-law claim based on an alleged violation of the Arizona Constitution, the Court would decline to exercise supplemental jurisdiction over that claim following the dismissal of Plaintiffs' federal claims.  28 U.S.C. § 1367(c).

over 200 years later).

Plaintiffs' assertion that H17032 makes possessing certain shipping containers on certain properties "a criminal offense" (Doc. 51 ¶ 62) is a legal conclusion couched as a factual allegation and is not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678-79. Plaintiffs have not identified, and the Court cannot find, a specific part of H17032 that creates a criminal offense where there previously was none. Thus, H17032 cannot be an *ex post facto* law.[4]

Plaintiffs also assert a bill-of-attainder claim—they allege that "the evidence will show that Yavapai County did . . . enact Yavapai County Ordinance No. HA-H17032 . . . knowing said enactment to be a bill of attainder . . . in violation of the U.S. Constitution Article I, []§ 9." (Doc. 51 ¶ 62.) They elaborate that "in retaliation for losing a lawsuit brought 14 years earlier . . . [the] bill of attainder intended to give subsidiary legislative units undeserved, indiscriminate, quasi-judicial power(s) under color of authority of A.R.S. § 11-815 and A.R.S. § 11-866 maliciously intended to infringe the grandfathered rights of Plaintiffs and select other classes of Yavapai County resident landowners similarly situated to possess and lawfully use steel shipping containers for secure storage and other lawful purposes on property they own." (*Id.*) The Court views this as an argument that H17032 targets a class of landowners, including Plaintiffs, by preventing them from using shipping containers in a way they had done before.

Under federal law, "a bill of attainder is a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." *SeaRiver Mar. Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662, 668 (9th Cir. 2002) (internal quotation marks omitted) (quoting *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 468 (1977)). "Three key features brand a statute a bill of attainder: that the statute (1)

---

[4]    There is an exception to this civil/criminal dichotomy—even "[w]hen a statute is expressly civil in intent," an *ex post facto* claim may lie upon "the clearest proof" that the statute, "on its face, is punitive in effect." *Does v. Wasden*, 982 F.3d 784, 791 (9th Cir. 2020). That exception is nevertheless inapplicable here because Plaintiffs do not attempt to invoke it and, as discussed below regarding the bill-of-attainder claim, H17032 is not punitive.

specifies the affected persons, and (2) inflicts punishment (3) without a judicial trial." *Id.*

The Court will begin with the second element—the infliction of punishment—because the analysis is straightforward. "Three inquiries determine whether a statute inflicts punishment on the specified individual or group: (1) whether the challenged statute falls within the historical meaning of legislative punishment; (2) whether the statute, viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes; and (3) whether the legislative record evinces a congressional intent to punish." *Id.* at 673. "Where such legitimate legislative purposes do not appear, it is reasonable to conclude that punishment of individuals disadvantaged by the enactment was the purpose of the decisionmakers." *Id.* at 674 (citation omitted). But "[f]orbidden legislative punishment is not involved merely because the Act imposes burdensome consequences. Rather, we must inquire whether [the legislature] inflicted punishment within the constitutional proscription against bills of attainder." *Nixon*, 433 U.S. at 473-74.

These standards are not satisfied here. First, H17032 "evinces none of the historical means of punishment that characterize an unconstitutional bill of attainder. Traditionally, bills of attainder sentenced the named individual to death, imprisonment, banishment, the punitive confiscation of property by the sovereign, or erected a bar to designated individuals or groups participating in specified employments or vocations." *SeaRiver*, 309 F.3d at 673. "[C]onfiscation of property" seems the most relevant here, but it is unavailing. Putting aside the subject-matter jurisdiction concern that H17032 apparently does not regulate Plaintiffs at all, Plaintiffs do not allege that H17032 would lead to the direct confiscation of their property. And even if Plaintiffs are alleging the indirect confiscation of their property in the style of a regulatory taking, they do not allege that the taking was punitive.[5]

Second, H17032 furthers nonpunitive legislative purposes. The County is

---

[5]     Admittedly, it begs the question somewhat to determine whether an ordinance "inflicts punishment" by asking whether a confiscation is "punitive."

statutorily authorized to regulate the use of land, A.R.S. §§ 11-801 to 21, placing H17032 squarely within its legislative prerogative.  (Doc. 52 at 7.)  In their reply, Plaintiffs loosely assert a nefarious legislative purpose: "Yavapai County suddenly discovers a pressing need to enact a law which not only is deliberately intended to discriminate against small tract owners who desire a ready-made, very secure, steel storage shed that is portable and can be easily moved anywhere on the property but also selectively isolates the steel storage shed classification from wood sheds, truck boxes, etc."  (Doc. 53.)  But the County may discriminate against certain classes without violating the prohibition on bills of attainder— it may *not* apply that discrimination in a way that punishes a person or class.  Plaintiffs have not asserted such a punishment.  Any loss of property is no doubt burdensome, but the loss of a storage unit is not a "severe" burden as compared to death, imprisonment, banishment, or loss of employment, *i.e.,* the "historical means of punishment."

Third, the legislative record does not evince an intent to punish.  The minutes from the Board of Supervisors meeting on November 1, 2017 suggest no punitive motive behind H10732.  The Board expressed its desire to "allow the landowner a right to place a container on the property, rather than getting input from a neighbor," and "reduce the number of use permits."  Indeed, opposing and abstaining Supervisors only questioned the amendment's scope and whether administrative notice obligations had been satisfied.  (Doc. 51-1 at 8.)

Under these circumstances, it is not reasonable to conclude that "punishment of individuals disadvantaged by the enactment was the purpose of the decisionmakers." *Nixon*, 433 U.S. at 476.  Plaintiffs have thus not carried their burden, as the "one who complains of being attainted," of establishing "that the legislature's action constituted punishment and not merely the legitimate regulation of conduct."  *SeaRiver*, 309 F.3d at 674.

Finally, Plaintiffs assert that the enactment of H17032 was "in violation of the Fourth, Fifth, Eighth, and Fourteenth Amendment(s)."  (Doc. 51 ¶ 62.)  Although *pro se* plaintiffs are entitled to "great leeway," pleadings "nonetheless must meet some minimum

threshold in providing a defendant with notice of what it is that it allegedly did wrong." *Brazil*, 66 F.3d at 199.  It is not enough for a plaintiff simply to allege that a wrong has been committed and demand relief.

Plaintiffs' Fourth, Fifth, Eighth, and Fourteenth Amendment claims are presented in paragraph 62 without elaboration and do not provide the County with notice of what it has allegedly done wrong.  This lack of notice is obvious in the County's motion to dismiss, which responds to the *ex post facto* and bill-of-attainder claims with clarity but is forced to "spray and pray" in response to every imaginable argument Plaintiffs might be asserting under a cornucopia of constitutional provisions.  (Doc. 52 at 8-10.)  Although mindful of the great leeway it must extend to *pro se* litigants, without true adversarial briefing, the Court cannot analyze the sufficiency of Plaintiffs' assertions.  *See generally United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) ("In our adversarial system of adjudication, we follow the principle of party presentation . . . . [W]e rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.").

Even if the Court were prepared to grant Plaintiffs an extraordinary degree of leeway by acting as inquisitor, it cannot formulate a theory of harm under the Fourth, Fifth, Eighth, or Fourteenth Amendments.[6]  After reviewing the original and amended complaint, the Court imagines that Plaintiffs could be asserting Fourth Amendment search and seizure claims, Fifth Amendment takings claims, Fifth and Fourteenth Amendment due process claims, and Eighth Amendment excessive fines claims.  But Plaintiffs do not assert that H17032 was enforced against them, nor do they assert that the text of H10732 authorizes search or seizure, administrative proceedings, or new fees.

The County suggests that Plaintiffs may have meant to raise a regulatory takings claim.  But the Court agrees that Plaintiffs' regulatory takings theory is "not clear from the complaint or FAC"  (Doc. 52 at 8) for at least two reasons.  First, Plaintiffs "invoke

---

[6]      This may be a moot point—in their reply, Plaintiffs discuss *ex post facto* and bill-of-attainder claims but note that "all other constitutional arguments [are] inapplicable based on Defendant's 'barred claim' opening."  (Doc. 53 at 5.)

supplemental jurisdiction" to assert "unjust diminution of value & uncompensated regulatory takings under color of state law." (Doc. 51 ¶ 13.)  A Fifth Amendment claim would be well within this Court's federal-question jurisdiction, so Plaintiffs' invocation on 28 U.S.C. § 1367 seems to suggest that any regulatory-takings claim would rely on theories that were dismissed in this Court's February 1, 2021 order.  Second, although Plaintiffs meticulously detail economic loss resulting from the administrative hearing (*see, e.g.*, Doc. 51 at 29), Plaintiffs do not assert any economic loss directly resulting from H10732 or expand on their regulatory takings claim in any meaningful way.  As a result, the Court cannot identify the relevant branch of regulatory taking that Plaintiffs assert between the "three types of [unconstitutional] regulatory action the [Supreme Court] has recognized." *Bridge Aina Le'a, LLC v. Land Use Comm'n*, 950 F.3d 610, 625 (9th Cir. 2020).

At any rate, the Court has dismissed all of Plaintiffs' surviving federal claims due to a lack of standing.  And although *pro se* litigants are ordinarily entitled to notice of deficiencies in their complaint and given the opportunity to amend, *Lucas*, 66 F.3d at 248, granting leave to amend in this case would be futile.  *Clark v. Duncan*, 131 F.3d 145 (9th Cir. 1997) ("Where amendment of a pro se litigant's complaint would be futile, denial of leave to amend is appropriate.").

Accordingly,

**IT IS ORDERED** that the County's motion to dismiss (Doc. 52) is **granted.**  The Clerk of Court shall enter judgment accordingly.

Dated this 28th day of September, 2021.

Dominic W. Lanza
United States District Judge